**LIFE & CASUALTY INSURANCE COMPA-
NY OF TENNESSEE, Appellant,**

v.

**Homero RIVERA, Appellee.**

**No. 306.**

Court of Civil Appeals of Texas.

Corpus Christi.

Nov. 9, 1967.

Rehearing Denied Nov. 21, 1967.

Wm. R. Anderson, Jr., and James H. Atwill, of Sorrell, Anderson & Porter, Corpus Christi, for appellant.

Eduardo E. de Ases, Corpus Christi, for appellee.

## OPINION

NYE, Justice.

This is a suit on a life insurance policy brought by Homero Rivera against Life and Casualty Insurance Company of Tennessee. Plaintiff alleged that he entered into a contract with the defendant insurance company whereby the plaintiff agreed to pay a stipulated premium and defendant agreed to issue a policy of insurance insuring the lives of the plaintiff, his wife and children. The insurance company issued a non-medical life insurance policy on the life of the plaintiff in the principal sum of $1,000.00 and $500.00 on each dependent child. One of plaintiff's children Nora Linda Rivera died several months after the policy was issued. Plaintiff alleged that the contract of insurance was in full force and effect, the premium had been paid, and that after notice to the insurance company, the claim upon the policy had been denied. The insurance company defended on the sole ground that the deceased child was not in good health and that under the express terms of the policy said insurance would not be effective unless at the time of such issuance of the policy the said Nora Linda Rivera was in fact in good health. The case was tried before the court without the aid of a jury resulting in a judgment in favor of the plaintiff for $500.00 plus costs and $250.00 attorney fees.

The insurance policy provided that: "This Policy shall take effect as of the date of issue provided the insured, the in-

sured Wife and each Dependent Child are alive and in good health on such date and the first premium shall have been paid in cash." The insurance company's agent completed the application for insurance and filled in the blanks because the plaintiff insured was an illiterate farm worker who could not read nor write. The insured stated that he and his children were in good health. The insurance company did not raise any question about fraudulent statements or misrepresentations.

The appellant insurance company's sole defense in the trial court and here is that the deceased child was not in good health at the time the policy of insurance was issued. Appellant's four points of error are to the effect that the plaintiff was required to prove that the deceased was in good health at the time the policy was issued. Appellant argues that in view of the fact that the insurance company plead this defense (that the insured deceased child was not in good health) that under Rule 94 Tex.R.Civ.P. the burden of proof was on the plaintiff and that the plaintiff failed to meet this burden, and that the trial court was therefore in error in rendering judgment for the plaintiff. Appellant contends that when the defendant insurance company pleads exceptions as a defense to the policy, the plaintiff has the burden of proof to negate the exclusions to the limitations contained in the policy pleaded as a defense by the defendant's answer. Citing Sherman et ux v. Provident American Insurance Co., 404 S.W.2d 340 (Tex.Civ.App.—Beaumont 1966, affirmed 421 S.W.2d 652, Tex.1967). It is true that where an insurance company issues a policy of insurance containing certain exceptions, limitations and exclusions to the coverage and the defendant insurance company answers a suit based on its policy of insurance pleading certain exclusions and limitations contained in the policy, which the company contends would relieve it of liability, then the burden of producing evidence to demonstrate that the plaintiff's cause of action was not attributable to the pleaded exclu-

sions and limitations is on the plaintiff. Sherman v. Provident American Insurance Company, supra; Hardware Dealers Mutual Insurance Co. v. Berglund, 393 S.W.2d 309 (Tex.Sup.1965) and International Travelers Association v. Marshall, 131 Tex. 258, 114 S.W.2d 851 (1938) see the cases cited therein. But this is not the situation where the defense by the insurer goes to a promissory warranty that affects the very validity or effectiveness of the policy of insurance itself. See 32 Tex.Jur.2d 795, Sec. 540.

Where the plaintiff in a suit on the policy pleads and proves the execution and delivery of a policy of life insurance, he makes out a prima facie case as to the original validity of the policy of insurance. Trevino v. American Nat. Ins. Co., 140 Tex. 500, 168 S.W.2d 656 (Tex.Com.App., opinion adopted Tex.Sup.1943). The plaintiff suing on the policy of insurance is not required either to plead or prove that the deceased insured was in sound health when the policy was issued. Ill health of the insured or fraudulent representations as to the condition of the insured's health are extrinsic facts, matters of defense, upon which the insurer may rely in contesting the policy that evidences its liability. The plaintiff made out a prima facie case by proving up a valid life insurance policy held by him on the life of the deceased child. The burden of invalidating the policy was upon the defendant insurance company. Manhattan Life Insurance Co. v. Harkrider, 396 S.W.2d 207 (Tex.Civ.App.—Austin 1965, wr. ref., n. r. e., Tex.Sup., 402 S.W.2d 511, 1966); Trevino v. American Nat. Ins. Co., supra. This is true under Rule 94, Tex.R. Civ.P. as nothing under the rule changes the burden of proof on such issue of good health.

The question concerning the burden of proof was recently before the Supreme Court of Texas. There the insurance company sought to cancel a non-medical life insurance policy. The beneficiary in a cross action sought recovery of the policy

proceeds. The policy contained the similar provision that it shall not take effect unless the insured was in good health at the time it was delivered to him. The court stated that the insurance company had the burden of proof on the question of good health in either situation as plaintiff or as cross defendant. The insurance company is required to obtain a finding from a preponderance of the evidence that the insured was not in good health. Great American Reserve Insurance Co. v. Britton, 406 S.W. 2d 901 (Tex.Sup.1966); 46 C.J.S. Insurance § 1319 at pp. 424 and 431.

In the case at bar the judgment was for the insured in face of the defense that the deceased was not in good health. There were no findings of fact and conclusions of law requested or found. Therefore, the judgment of the trial court should be affirmed if it can be upheld on any legal theory that finds support in the evidence. Bishop v. Bishop, 359 S.W.2d 869 (Tex. Sup.1962). The trial court impliedly found that the deceased was in good health at the time the policy went into effect. Where the insurer fails to obtain a favorable finding on the question of good health, then the true question to be decided by us is whether the evidence establishes conclusively, according to recognized legal standards, that the insured was not in good health. Great American Reserve Insurance Co. v. Britton, supra. The Court in Britton stated:

"* * * 'good health' does not mean 'perfect health'. * * * The term (the Court reasoned) is usually defined as a state of health free from any disease or bodily infirmity of a substantial nature which affects the general soundness and healthfulness of the system seriously or materially increases the risk to be assumed by the insurer. * * *" Citing cases. "* * * We have also held that a good health provision is breached if the applicant 'is suffering from a serious kind of illness, which continues and eventually causes his death.' " Citing cases.

The conclusiveness of the insurance company's proof that the deceased was not in good health must be tested by these standards.

The history of the deceased child revealed five periods of hospitalization. It is apparent from the evidence that the five confinements were not in any way connected to one another. Quoting from the hospital records the treating doctor stated that the dates of admission and the primary complaints were as follows:

1. July 26, 1959: At age seven months. Acute cerebellar ataxia, an inflammation of cerebellum or the lower part of the brain. The cause was probably a virus.

2. February 6, 1961: History given that child had two convulsions prior to admission. Diagnosis: "Convulsions", although she had no convulsions in the hospital. Discharged February 21 in good condition.

3. May 14, 1962: The hospital records showed a history of convulsions prior to admission to the hospital but patient responded to treatment and had no convulsions in the hospital. Discharged May 22.

4. January 30, 1964 to February 11, 1964: Acute otitis media, (which means an abscessed middle ear) and, acute pharyngitis, (an acute inflammation of the throat). There was no history of convulsions either before admission or during her stay in the hospital which ended February 11, 1964.

5. June 4, 1964: The reason for her admission was a condition of acute diarrhea and as a result of this, she was acutely dehydrated and acidosis and failed to respond to treatment and died June 11, 1964.

Without us considering the question of the admissibility of the testimony of the insurance company's doctor, he testified in substance from a hypothetical question, basing his opinion upon a study of the deceased's medical history and medical records. The doctor testified in effect that the child was grievously ill; that her disease was of a substantial nature; that it

affected the general soundness and health-fulness of her system which seriously and materially increased the risk to be assumed by the insurer; that the defendant insurance company would not have issued the policy if it had known of the history of convulsions and of the treatment that the child had received from physicians over the five years prior to the issuance of the policy.

The treating doctor testified that the cause of death was ulcerative enteritis, that is, an inflammation of the small bowel and this was because of diarrhea. The insurance company's doctor contended that the child had a history of convulsions and therefore not in sound health at the time the policy was issued. In response to the question of whether or not the cause of death had anything to do with the child's history of convulsions the treating doctor testified:

"Primarily, I think not. Now, the convulsions that this child had subsequent to its primary admission here, I think, reasonably could be attributed to the primary illness, the cerebellar ataxia the child had, the inflammation of the brain, which probably could have left a residual, which made this child susceptible to convulsions. On the other hand, from our history on the previous admissions, this child doesn't act any different than lots of children that have convulsions at the onset of acute illness, just like they have fever, some children just have an acute illness and have convulsions. If it were not for the fact the child did have the brain inflammation originally, we would not have paid particular, I mean, we would not have thought it unusual that this child did have the convulsions at the onset of severe illnesses, which she had."

This doctor did not think that it was considered unusual for the child to be admitted to the hospital five times during her lifetime of five and one half years. The cause of death, ulcerative enteritis which is an inflammation of the bowels caused by diarrhea and intestinal infection has a sudden onset and had no connection with the previous hospitalization periods. Southern Life & Health Ins. Co. v. Grafton, 414 S.W.2d 214, at 218 (Tex.Civ.App.—Tyler 1967).

The opinion testimony of experts, although persuasive, is not altogether conclusive. The trial court or the jury may take in consideration the intelligence, learning and experience of the witnesses and the degree of attention each deserves. The Supreme Court in the Britton case supra, stated that medical diagnosis and lay testimony may have an important bearing, or even a controlling effect, on the issue of good health. Here the issue of good health was in dispute. Our courts have been liberal in receiving opinions of ordinary lay witnesses. A witness need not be an expert in medical matters to give an opinion as to the observed physical condition of a person. McCormick & Ray 271, § 1427. The father of the deceased testified that other than when the child was in the hospital and being treated, that between such times, the child appeared to be in good health. He testified that during the time from the last hospitalization until the issuance of the policy that the child was "always well at that time then." The mother testified that "Well, as far as we could tell, she (the deceased child) was normal. She used to help me, you know, carry out the trash and rinse out babies diapers and go to church and play as any other normal child." The question of whether or not the child was not in good health was a question of fact that the trier of facts could determine by consideration of lay testimony as well as that of experts. American Nat. Ins. Co. v. Ferguson, 209 S.W.2d 797 (Tex. Civ.App.—Eastland 1948); Lincoln Income Life Ins. Co. v. Anderson, 409 S.W.2d 555 (Tex.Civ.App.—Amarillo 1966, ref. n. r. e.). In the Britton case the Court in considering the testimony of one of the expert witnesses who testified that the deceased had a continuing type of disease, said: "* * * The result is that to hold the good health pro-

vision of the policy was breached as a matter of law we would have to take judicial notice that the nature of one or more of the ailments was such as to seriously affect the soundness of Britton's (deceased's) health or to materially increase Great American's (insurer's) risk. These are relative matters, and except in extreme cases should be left for jury determination from evidence introduced on trial."

In the case at bar the appellant insurer cites Texas Prudential Insurance Co. v. Dillard, 158 Tex. 15, 307 S.W.2d 242 (1957). The same case was cited in the Britton case, supra. In Dillard the proof was that the insurer had established the breach of a good health provision in the policy as a matter of law. The Dillard case and others cited by appellant do not control the decision of the case under the facts before us. We hold that the evidence does not establish conclusively, according to legal standards, that the Rivera child was not in good health when the policy was delivered. Appellant's points are overruled.

Judgment of the trial court is affirmed.