TRUCKER'S EQUIPMENT,
INC., Appellant,

v.

Aurora SANDOVAL, a widow, et
al., Appellees.

No. 1253.

Court of Civil Appeals of Texas,
Corpus Christi.

June 22, 1978.

Ballard Bennett, Adams, Graham, Lewis, Jenkins, Jones & Graham, Harlingen, for appellant.

James DeAnda, Flores, Sanchez, DeAnda & Vidaurri, McAllen, for appellees.

## OPINION

NYE, Chief Justice.

This is a venue case. Aurora C. Sandoval, individually and on behalf of her minor daughter, brought suit against defendant Trucker's Equipment, Inc., under the Texas Wrongful Death statute for the death of her husband. The accident allegedly resulted when a hydraulic hose, which defendant Trucker's Equipment, Inc., had assembled to a coupling, broke loose from the coupling causing a cotton shredder to fall on the decedent. Suit was filed in the District Court of Cameron County, Texas. Defendant filed a plea of privilege to be sued in Nueces County, the county of its alleged general office and principal place of business. The trial court, after hearing evidence, overruled the defendant's plea of privilege, and this appeal resulted.

Plaintiffs are residents of Cameron County, Texas. Defendant Trucker's maintained

a place of business in Harlingen, Cameron County, Texas. Defendant's general business activities included the sale, distribution and assembly of hydraulic hoses and fittings for tractors and trucks. The decedent, at the time of his death, was employed as a farm worker on the McElwrath farm in Cameron County, Texas. On August 14, 1974, the date of his death, the decedent was working underneath an elevated cotton shredder. The shredder was held aloft by hydraulic pressure through hoses attached to a tractor. When the hydraulic hose, which held the shredder in the elevated position, tore loose from its coupling, it caused the shredder to drop and crush the decedent. There were no eyewitnesses to the accident.

Plaintiffs alleged that defendant Trucker's Equipment sold the specific coupling to McElwrath farms and assembled the offending coupling to the hydraulic hose in question. Plaintiffs alleged that, as assembled, the hydraulic hose and coupling were defective, unreasonably dangerous, and not reasonably suitable for the purposes for which such assembled hose was intended. Plaintiffs further alleged that the defendant negligently assembled the coupling to the hydraulic hose and that such negligence proximately caused the decedent's death. In response to defendant's plea of privilege, the plaintiffs filed a controverting affidavit and a supplemental controverting affidavit alleging venue to be maintainable in Cameron County under subdivisions 9a, 23 and 31 of Article 1995, Tex.Rev.Civ.Stat.Ann. (1965).

At the plea of privilege hearing, David McElwrath, Jr., the McElwrath farm manager, testified that he purchased the specific hydraulic hose in question with its original fittings from Aldridge-Washmon in Harlingen, Texas, on August 12, 1974. He delivered the hose to the decedent late that night. He further testified that the hose was purchased for the purpose of replacing an old hydraulic hose on the cotton shredder in question. The next day certain witnesses observed the decedent using the tractor and cotton shredder on the McElwrath farms. Late that same afternoon, the decedent

stopped his wife, who was also working on the farm, to inform her that he was in a hurry to reach Trucker's Equipment, Inc. prior to closing time in order to have some hydraulic hoses repaired. Defendant Trucker's place of business was located approximately 10 miles away from the farm.

The next afternoon, the decedent's body was found pinned beneath the cotton shredder, which, at that time, was located inside a barn on the farm. The decedent had apparently been greasing the shredder. The decedent was still clasping a grease gun in his right hand. The hydraulic hose connecting the tractor to the cylinder that lifted the cotton shredder had pulled loose from one of its couplings. The coupling in question remained attached to the tractor but the hydraulic hose had pulled away from this particular coupling. It was dangling off to one side of the shredder. The other end of the hydraulic hose remained attached to the shredder. Hydraulic oil from the detached hose had drained onto the barn floor. Testimony at the trial established that the loss of hydraulic oil would cause the cotton shredder to drop from a raised position. The tractor and cotton shredder, otherwise, were in good working order.

McElwrath identified the hydraulic hose which had separated from its coupling as being the same hose he had purchased on August 12, two days before the death of the decedent. He further testified that the coupling from which the hose separated was not the same coupling that was on the new hose when he purchased it. The coupling from which the hose separated was a "Stratoflex" brand. The manager of Trucker's Equipment, Inc. in Harlingen testified that Trucker's Equipment, Inc., and Cummins Sales and Service in Brownsville were the only two area stores carrying this particular brand of couplings. McElwrath further testified that the McElwrath Farms limited their purchase of hoses and couplings to two sources: Trucker's Equipment, Inc., in Harlingen, and Burton's Auto Supply. The only exception was the single hose that was purchased from Aldridge-Washmon on Au-

gust 12th. In addition, there was introduced into evidence, an invoice issued by defendant to "McElwrath" or "McElwreth" on August 13, 1974. This was the day the deceased went to defendant's place of business to get some hydraulic hoses repaired. This invoice contained a charge for the purchase of a Stratoflex coupling as well as a charge for fitting the coupling on a hydraulic hose. The serial number of the coupling shown on the invoice matched the serial number stamped on the particular coupling in question which was on the cotton shredder that crushed the decedent.

Plaintiffs' evidence included the testimony of a professional mechanical engineering consultant who was experienced in the field of determining the causes of failures of hydraulic equipment, including hydraulic hoses as they are fitted into couplings. He testified that the hydraulic system on the tractor in question which raises and lowers the shredder operated between 1800 pounds and 2000 pounds per square inch of pressure. The identifying number on the hydraulic hose indicated that the hose was designed to operate at 2000 pounds of working pressure, to withstand a standard in-use test of 4000 pounds of pressure and to expand or burst only at a pressure of 8000 pounds. The identification marks on the coupling in question indicated that it was designed to be used on the particular hydraulic hose in question. When properly assembled, the portion of the hose inside the coupling would withstand more pressure per square inch than the portion of the hose outside of the coupling. This expert witness further testified that he had examined the hose and the fitting in question for the purpose of determining why the specific hose separated from the coupling. He had taken x-rays of the coupling in question to determine its internal configuration. Based on all of his examination and his expertise, the consultant testified, in effect, that the failure resulted from the manner in which the hydraulic hose was attached to the coupling. He stated specifically that the failure was due to excessive turning of the hose inside the coupling while being assembled, which damaged and tore the outer rubber jacket of the hose. This rendered it unsuitable for use in a hydraulic system with a pressure designation of between 1800 and 2000 pounds. He compared the effect on the hose in the coupling to that of stripping the threads of a nut and bolt. The expert testified that the jacket of the hose as fitted into the coupling would not, in his opinion, withstand 200 pounds of pressure.

Based on all of this evidence, the trial court overruled defendant Trucker's plea of privilege. Defendant brings forward legal and factual insufficiency points directed toward the trial court's implied findings that venue was maintainable in Cameron County under each subdivision of Article 1995 relied upon by plaintiffs.

■ Findings of fact and conclusions of law were not requested or filed. In such a case, the trial court's judgment should be affirmed if it can be upheld on any legal theory that finds support in the evidence. *Bishop v. Bishop*, 359 S.W.2d 869 (Tex.Sup. 1962); *Mobile County Mutual Insurance Co. v. Jacobs*, 531 S.W.2d 436, 438 (Tex.Civ.App. —Corpus Christi 1975, no writ); *Life & Casualty Insurance Company of Tennessee v. Rivera*, 420 S.W.2d 788 (Tex.Civ.App.— Corpus Christi 1967, no writ). We must presume, therefore, that the trial court resolved every issue of fact that was supported by evidence in appellee's favor. We view such evidence in the light most favorable to such findings, disregarding all evidence that is contrary thereto. *James v. Drye*, 159 Tex. 321, 320 S.W.2d 319 (1959); *Mobile County Mutual Insurance Co. v. Jacobs, supra*; *Loyd W. Richardson Construction Corporation v. Corpus Christi State National Bank*, 513 S.W.2d 287 (Tex.Civ. App.—Corpus Christi 1974, no writ).

We first consider whether or not venue is properly maintainable in Cameron County under subdivision 31. Plaintiffs' pleadings and controverting affidavits were sufficient to show plaintiffs' reliance upon each venue provision of subdivision 31. Subdivision 31 provides as follows:

"Suits for breach of warranty by manufacturer of consumer goods may be brought in any county where the cause of action or part thereof accrued, or in any county where such manufacturer may have an agency or representative, or in the county in which the principal office of such company may be situated, or in the county where the plaintiff or plaintiffs reside."

■ In order to maintain venue under subdivision 31 "in the county where the plaintiff or plaintiffs reside," the burden was on the plaintiffs to allege and prove the following venue facts: 1) that the plaintiffs' suit is one for breach of warranty; 2) that the defendant is the manufacturer of the product in question; 3) that the product in question is consumer goods; and 4) that the suit is brought in the county where the plaintiffs reside. The Court can look to the pleadings to determine whether the nature and character of the suit is one for breach of warranty. The plaintiffs must establish the remaining venue facts by proper extrinsic evidence. *Hall v. Ford Motor Company* 565 S.W.2d 592 (Tex.Civ.App.—Corpus Christi 1978, no writ); *Maintenance & Equipment Contractors v. John Deere Company*, 554 S.W.2d 28, 31 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ dism'd). In the case before us, the plaintiffs' petition, which was incorporated by reference into the controverting affidavits, alleged that the hydraulic hose and its fittings, as assembled and sold by the defendant, were "not reasonably suitable for the purposes for which such assembled hose was intended" thereby alleging breach of an implied warranty. See *Lilly Distributing Company of San Antonio v. Associated Milk Producers, Inc.*, 553 S.W.2d 2 (Tex.Civ.App.—El Paso 1977, no writ).

Regarding the second venue fact above, the plaintiffs made certain requests for admissions which the defendant answered in the affirmative:

1) "That during the entire year of 1974, Defendant was engaged in business in the State of Texas, which business included the sale, distribution and assembly of hydraulic hoses, fittings, and other parts and equipment for trucks and tractors";
2) "That Exhibit No. 1, attached hereto, is a true and correct copy of an invoice or receipt issued by Defendant on August 13, 1974, for a hose fitting and for assembly of such fitting to a hydraulic hose";
3) "That the assembly and sale referred to in [No. 2 above] was done by the Defendant, acting through its employees of Defendant acting within the course and scope of their employment for Defendant and that such assembly and sale was done in the regular course of business in which Defendant was engaged at the time of such assembly and sale."

■ In addition to these admissions, plaintiff and her adult son both testified that on August 13, 1974 the decedent informed them that he intended to go to Trucker's Equipment, Inc., in Harlingen to have certain hydraulic hoses repaired. Plaintiff testified that the decedent briefly conversed with her at the end of the work day on the 13th. The decedent told her that he was in a hurry to reach Trucker's prior to the time that they closed. These statements made by the decedent to his wife and to his son were admissible as declarations tending to show the state of mind, the immediate purpose, and the destination of the decedent on August 13th. See *Davis v. Argonaut Southwest Ins. Co.*, 464 S.W.2d 102, 104 (Tex.Sup.1971); *Great American Indemnity Company v. Elledge*, 159 Tex. 288, 320 S.W.2d 328, 329 (1959); *Prater v. Traders & General Ins. Co.*, 83 S.W.2d 1038, 1039 (Tex.Civ.App.—Waco 1935, no writ); 1 McCormack & Ray, Texas Practice, Evidence, §§ 861–863, 868 (1956).

■ A manufacturer such as this defendant, within the meaning of subdivision 31, includes an entity which assembles articles or fabrics that someone else has made and by reason of the assembly produces a useful article. So, in order to maintain venue under subdivision 31, the product in question must also be properly classified as a consumer good. "Consumer goods" within the meaning of subdivision 31 of Article 1995 has been recently held to include goods

used for agricultural purposes, and more specifically, a tractor. *Maintenance & Equipment Contractors v. John Deere Company,* supra. Unquestionably, the cotton shredder in question used with a tractor is within the category of goods used for agricultural purposes. The hydraulic hose and the coupling as assembled is a component part of the shredder and tractor. We see no sound reason for differentiating, in this instance, component parts from the entire product in question. We hold that the hydraulic hose with the coupling, as assembled by Trucker's Equipment, Inc., is properly classified as consumer goods, as contemplated under subdivision 31 of Article 1995. The undisputed evidence established that at all relevant times, plaintiffs were residents of Cameron County. Plaintiffs thus established all of the venue facts necessary to maintain venue under subdivision 31 in Cameron County.

Plaintiffs also relied upon subdivision 9a to maintain venue in Cameron County. It has been universally held by our appellate courts that in order to maintain venue under subsection 9a of Article 1995 that plaintiff must allege and prove facts that an act or omission of negligence of the defendant or his servant, agent, or representative, acting within the scope of the employment proximately caused plaintiffs' injuries and that such negligence occurred in the county where the suit was filed. *Sunset Brick & Tile, Inc. v. Bushong,* 419 S.W.2d 386, 388 (Tex.Civ.App.—Corpus Christi 1967, no writ); *Sunset Brick & Tile, Inc. v. Miles,* 417 S.W.2d 93, 95 (Tex.Civ.App.—Corpus Christi 1967, no writ); 1 McDonald, Texas Civil Practice, § 4.17.2 (1965).

In points of error three through six, defendant Trucker's Equipment, Inc., contends that the trial court erred in overruling its plea of privilege because there was no evidence or, in the alternative, factually insufficient evidence to support the trial court's implied findings that 1) defendant negligently assembled the coupling to the hose in question, and 2) that such negligence, if any, was a proximate cause of the injury and death of the decedent.

■ Defendant Trucker's owed a duty to the decedent to use reasonable care in assembling the coupling to the hose in question. See Restatement of the Law on Torts 2nd §§ 404, 395, and comment f. (1965). The negligence of the defendant was in the manner in which the fitting was attached to the hose end, and specifically due to the excessive turning which damaged and tore the rubber jacket rendering the hose unsafe for its intended use. The expert witness testified and demonstrated to the trial court in detail, the configuration of the tear, the manner in which it occurred, the precautions which could have easily been taken to prevent the occurrence and the result. The defendant does not challenge the witness' qualifications nor his competence to express his opinions, based on his observations, studies and findings. Although defendant had its own expert examine and study the hose and fitting, it made no attempt to dispute the testimony of plaintiffs' expert in any respect. There was ample evidence, both direct and circumstantial, to support the court's implied finding that the defendant was negligent.

■ Proximate cause embraces two distinct concepts: 1) cause in fact and 2) foreseeability. *Baumler v. Hazelwood,* 162 Tex. 361, 347 S.W.2d 560, 564 (1961). In this case the direct and circumstantial evidence was sufficient to support the trial court's implied findings of proximate cause. The decedent was crushed by the cotton shredder because the hydraulic hose which connected the tractor outlet to the cylinder that lifts the cotton shredder separated from within the coupling which attached the hydraulic hose to the tractor. The connection attaching the other end of the hydraulic hose to the cylinder remained intact. The failure of the coupling to hold the hose released the hydraulic oil and caused the shredder to drop on the decedent. The defendant was engaged in the business of the sale, distribution and assembly of hydraulic hoses, fittings, and other parts for tractors. The defendant knew that the hose assembly would be used to raise and lower heavy farm equipment and that the

improper assembly of a coupling to a hydraulic hose could cause a failure of the hydraulic system and imperil anyone working around or beneath the equipment. It is not necessary that the precise manner or means of the injury resulting from the negligence be foreseen. All that is necessary is that a person of ordinary intelligence and prudence should have anticipated the danger to others created by his negligent act. The rule does not require that he anticipate the specific injury that might grow out of that dangerous situation. *Biggers v. Continental Bus System*, 157 Tex. 351, 303 S.W.2d 359, 364–365 (1957).

We have carefully examined all of the evidence contained in the record and find that it is sufficient to support the trial court's implied findings that the defendant was negligent in the manner in which it assembled the coupling to the hydraulic hose and that such negligence proximately caused the accident in question.

In view of our disposition of these points of error, it is unnecessary for us to consider appellants' remaining contentions.

The judgment of the trial court overruling defendant's plea of privilege is AFFIRMED.