**L & M–SURCO MANUFACTURING, INC., Appellant,**

v.

**WINN TILE COMPANY, Appellee.**

No. 1190.

Court of Civil Appeals of Texas, Tyler.

April 19, 1979.

Rehearing Denied May 17, 1979.

Michael L. Dunn, Kenley, Boyland, Hawthorn, Starr & Coghlan, Longview, for appellant.

Leonard E. Davis, Potter, Guinn, Minton, Roberts & Ireland, Tyler, for appellee.

McKAY, Justice.

The opinion of this Court dated March 22, 1979, is withdrawn and the following substituted therefor.

This is a venue case. The court below overruled the plea of privilege of one of the defendants and this appeal has resulted.

Winn Tile Co., appellee, brought this action against L & M–Surco Manufacturing, Inc. (appellant), L & M Tile Products, Ltd. of Canada, and Monarch Tile Manufacturing, Inc. Appellee is an installer of ceramic tile; appellant and the two other defendants are engaged in the business of manufacturing, selling, and distributing ceramic tile products. Appellee alleged that, relying on the defendants' warranties regarding their surpoxy mortar compound and epoxy grout compound, it purchased the compounds and properly used them in installing ceramic tile in a swimming pool at Stephen F. Austin University at Nacogdoches, Texas, in the spring of 1975. Further, appellee alleged that shortly after installation, a glue-like substance began seeping from the joints between the tiles, spotting and smudging the entire pool area, and rendering the installation unacceptable and worthless. The mortar and grout compounds, according to the petition, were defective, unfit for use, and failed to conform to the warranties made by the defendants. Appellee averred further that, after considerable effort to resolve the problem, it became necessary for it to remove the tile and the bedding compound and replace them, to its damage in the sum of $42,-355.28.

Appellee thus alleged a breach of express and implied warranties by the defendants. It also asserts a cause of action for violation of the Deceptive Trade Practices and Consumer Protection Act, Tex.Bus. & Comm. Code Ann. sec. 17.41 et seq. (hereinafter "DTPA" or the "Act") in that defendants allegedly committed false, misleading, and deceptive acts and practices, their actions being allegedly unconscionable. Under the provisions of said Act, appellee sued for treble damages and attorney's fees.

In response, appellant asserted its plea of privilege, alleging that it was neither a resident of Smith County, the county in which the suit was instituted, nor did it have an agency or representative in said county, and further alleging that its residence was Dallas County. Moreover, appellant claimed there was no exception to exclusive venue in its county of residence provided by law and prayed for a transfer of the cause, as to it, to Dallas County. Appellant also filed its answer, consisting of a general denial, subject to its plea of privilege.

Appellee entered its controverting plea, alleging that its residence is Smith County and that appellant was and is doing busi-

ness in Smith County. Appellee further states that two exceptions to exclusive venue in the county of appellant's residence are provided by law: (1) since this is an action for breach of warranty by a manufacturer, subdivision 31 of Article 1995, Tex.Rev.Civ. Stat.Ann., provides for venue in the county of suit; and (2) alternatively, the special venue provision of the DTPA allows venue in Smith County.

Following a hearing on appellant's plea of privilege, the trial court entered its order overruling said plea. Appellant thereupon duly perfected its appeal of that interlocutory order to this court, bringing two points of error. The substance of this appeal, as will be seen, is a question of the correct definitions of two terms. In its first point, appellant contends that the trial court erred in overruling its plea of privilege because appellee was not a "consumer" under the DTPA.

Section 17.56 of the DTPA contains its special venue provision. Inasmuch as this suit was filed prior to May 23, 1977, the effective date of the 1977 amendment to that section, we will be concerned with the section as it read before that date, which was as follows:

"Sec. 17.56. Venue

"An action brought under Section 17.50 or 17.51 of this subchapter may be commenced in the county in which the person against whom the suit is brought resides, has his principal place of business, or is doing business."

Section 17.50 provided, in part:

"Sec. 17.50. Relief for Consumers

"(a) A *consumer* may maintain an action if he has been adversely affected by any of the following:

"(1) the use or employment by any person of an act or practice declared to be unlawful by Section 17.46 of this subchapter;

"(2) a failure by any person to comply with an express or implied warranty;

"(3) any unconscionable action or course of action by any person;

.  .  .  .  .

"(b) In a suit filed under this section, each *consumer* who prevails may obtain:

"(1) three times the amount of actual damages plus court costs and attorneys' fees reasonable in relation to the amount of work expended  .  .  ,..." [Emphasis added.]

Section 17.46 provided and now provides, in part:

"Sec. 17.46. Deceptive Trade Practices Unlawful

"(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful.

"(b) The term 'false, misleading, or deceptive acts or practices' includes, but is not limited to, the following acts:

.  .  .  .  .

"(5) representing that goods  .  .  . have  .  .  . characteristics, ingredients, uses, benefits, or quantities which they do not have  .  .  .;

.  .  .  .  .

"(7) representing that goods or services are of a particular standard, quality, or grade  .  .  . if they are of another  .  .  .."

These are the statutory provisions under which appellee sues, his allegations coming within sec. 17.50 provided that he is a "consumer" within the meaning of that term as used in sec. 17.50(a). That term is defined in sec. 17.45, Definitions. That section was originally passed, with the rest of the subchapter, in 1973; it was amended in 1975 and again in 1977. The purchase of the goods involved here occurred prior to the effective date (September 1, 1975) of the 1975 amendments. At the time of said purchase, the subsection read, " 'Consumer' means an *individual* who seeks or acquires by purchase or lease, any goods or services." [Emphasis added.] In 1975, the words, "partnership or corporation" were added after the word "individual," and in 1977, the words "or governmental entity" were added. The term "individual" has not been defined in the act. It is not disputed that appellee "acquire[d] by purchase  .  .  .

[the] goods" involved here. The point of contention between the parties is whether appellee, as a *corporation*, came within the existing definition of "consumer," i. e., was the corporation an *individual*? We agree with appellant that it was not.

The basic rules of statutory interpretation are to seek diligently and enforce the intention of the Legislature in enacting the statute in question, said intention to be determined from the entire act and not from isolated portions thereof. Further, said intention controls over the language used, i. e., the intent rather than the strict meaning of the words used determines the interpretation to be given the statute. *City of Mason v. West Texas Utilities Co.*, 150 Tex. 18, 237 S.W.2d 273, 278 (1951).

In order to determine the intention of the Legislature in defining the term "consumer" as "an individual," we look first to the remainder of the definitions section of the DTPA. The term "person" is there defined as "an individual, partnership, corporation, association, or other group, however organized." This definition is in the original act, and has not been amended. The use of both of the words "corporation" and "individual" in the definition of "person" indicates that the Legislature did not consider the latter to include the former. Thus, prior to the effective date of the 1975 amendments, the term "person" specifically included corporations while the term "consumer" did not. We agree with appellant that it is clear that the Legislature knew the difference between a term which included corporations and one which did not. Had the Legislature desired to include corporations and other business organizations in the term "consumer," it would have been a simple matter of defining that term as a "person" rather than as an "individual," or merely expressly including corporations in the term "consumer." We must presume that the Legislature, by using different terms, had different significations in mind, and used them advisedly.

Viewing the entire act as it existed at the time of the purchase of these goods, we feel that it was the original intention of the Legislature in enacting it to protect individual natural persons, as consumers, from the overreaching of others. We do not feel that the subsequent amendment of the term "consumer" to include business and even governmental entities should alter our conclusion as to the legislative intent with regard to the original enactment.

Significantly, appellee cites us to no case, and we have found none, involving a corporate plaintiff which was allowed to sue as a consumer for redress under the DTPA, wherein the cause of action arose during the period between that Act's original effective date (May 21, 1973) and the effective date of the 1975 amendment (September 1, 1975) giving to corporations and partnerships a right of action thereunder.

Appellee argues that to hold that corporations were not consumers prior to September 1, 1975, would violate the underlying purposes of the DTPA. Appellee, however, in contending that the purpose of the statute is "to penalize the wrongdoer," misstates the express purposes of the act which are *"to protect consumers . . . and to provide . . . procedures* to secure such protection." Sec. 17.44, Tex.Bus. & Comm.Code Ann. [Emphasis added.] Our holding here does no violence to those express purposes.

Appellee also contends in reply to the first point of error that appellant's acts which allegedly constitute violations of the DTPA extended beyond September 1, 1975, thus entitling appellee to relief as a "consumer" within the meaning of that term as amended by the 1975 amendments. Appellee in oral argument cites the case of *Temple News Agency v. Want Ads of Waco*, 573 S.W.2d 269, 271 (Tex.Civ.App.—Waco 1978, no writ), for the proposition that a continuing course of conduct extending after the effective date of a statute (or presumably, an amendment to an existing statute) gives rise to a right of action under that statute (or amendment). In support of its contention, appellee states that although the purchase of the allegedly defective goods was made in spring 1975, appellant continued to make representations to appellee that the

problem that had arisen would be cured if appellee would clean the pool according to appellant's instructions. Appellee claims to have cleaned the pool in August 1975, and again in December 1975. For this contention appellee relies upon the following testimony, at the hearing on the plea of privilege, of Lloyd Watson, the president of appellee:

"Q[uestion by appellee's counsel] Did you notify L & M–Surco of this phenomenon [the seeping of the glue-like substance from the joints between the tiles]?

"A[nswer by Watson] Yes, we did.

"Q. And did they come out and look at it?

"A. Mr. Kirn [Division manager of appellant] came down and inspected the pool, yes.

"Q. Did they give you any advice as far as curing the problem?

"A. They told us to have the pool drained to clean it up.

"Q. Did you follow their instructions?

"A. We did.

"Q. When was the first time that you cleaned the pool, do you recall?

"A. I believe it was August of 1975.

"Q. Okay. When was the second time that you drained the pool and cleaned it out?

"A. In December of 1975.

"Q. Okay. And did these suggested techniques cure the problem?

"A. No, it continued."

Watson went on to describe the removal and replacement of the tile.

It is not disputed that the purchase of the products in question was made prior to September 1, 1975. Therefore, any representations in the nature of warranties which were relied upon by appellee in purchasing the goods were made and relied upon prior to that date. Although the above testimony demonstrates that the second cleaning of the pool was performed after September 1, 1975, neither it nor any other evidence presented at the hearing demonstrates that any representations were made by anyone on behalf of appellant to appellee after that date. The instructions said by Watson to have been given by appellant, i. e., to drain and clean the pool, apparently were given prior to the first cleaning in August 1975. There is no indication that those instructions or any accompanying representations were repeated after September 1, 1975.

It is clear that under the DTPA as it read at the time suit was filed herein, appellee, as plaintiff, was required, not merely to *allege* a cause of action under the act, but to *prove* such a cause of action, in order to take advantage of the special venue provision, sec. 17.56. That section, prior to May 23, 1977, provided, in part, "An action brought under Section 17.50 . . . may be commenced in the county [where the defendant] . . . is doing business." Effective May 23, 1977, it was amended to read, "an action brought *which alleges a claim to relief* under Section 17.50 . . . may be commenced in the county [where the defendant] . . . has done business." [Emphasis added.] Appellee's petition in this case was filed on May 20, 1977.

Appellee therefore falls squarely within the rules announced in *Doyle v. Grady*, 543 S.W.2d 893 (Tex.Civ.App.—Texarkana 1976, no writ); *Hudson & Hudson Realtors v. Savage*, 545 S.W.2d 863 (Tex.Civ.App.—Tyler 1976, no writ); and *Hanssard v. Ledbetter*, 561 S.W.2d 34 (Tex.Civ.App.—Waco 1978, no writ). In *Doyle* and *Hudson* the courts held that the general rule requiring a plaintiff to plead and prove a cause of action to support venue was applied to the DTPA's special venue provision as it existed prior to May 23, 1977. *Doyle*, supra at 895; *Hudson*, supra at 868. This court in *Hudson* additionally pointed out that it is essential that the application of any venue exception relied upon must clearly appear in the record, citing *Goodrich v. Superior Oil Co.*, 150 Tex. 159, 237 S.W.2d 969 (1951), and that venue may not be established by implication, citing *Saigh v. Monteith*, 147 Tex. 341, 215 S.W.2d 610 (1948). The court in *Hanssard* held that where the plaintiff filed suit, alleging a cause of action under the DTPA, prior to the effective date (May 23, 1977) of the amendment to sec. 17.56, he

must prove his cause of action. The court also pointed out the well settled rule that venue of an action is controlled by the law in effect at the time of the institution of the suit. *Id.* at 36–7. In the instant case, appellee failed to prove any violation of the DTPA by appellant after September 1, 1975, so as to take advantage of appellee's status as a "consumer" after that date.

We also note that appellee failed to plead any facts which demonstrate specifically that any action or representation was made by appellant after September 1, 1975, which would constitute a violation of the DTPA.

■ Appellee, therefore, was not a "consumer" within the meaning of the DTPA at the time of the acts complained of and had no standing to sue under the provisions of that Act. It therefore cannot maintain venue in the county of suit pursuant to the special venue provision of the Act. Accordingly, appellant's first point of error is sustained.

In its point of error two, appellant asserts that the trial court erred in overruling its plea of privilege in that venue in the county of suit was not properly established under the provisions of subdivision 31, Article 1995, supra, because the products involved are not "consumer goods."

Article 1995, subdivision 31, provides:

"31. Breach of warranty by a manufacturer.—Suits for breach of warranty by a manufacturer of *consumer goods* may be brought in any county where the cause of action or a part thereof accrued, or in any county where such manufacturer may have an agency or representative, or in the county in which the principal office of such company may be situated, or *in the county where the plaintiff or plaintiffs reside.*" [Emphasis added.]

The venue facts to be established by a plaintiff attempting to maintain venue in a particular county pursuant to subdivision 31 are: (1) that the suit is one for breach of warranty; (2) that the defendant is a manufacturer of the product in question; (3) that the product in question is consumer goods; and (4) that the suit is brought in the county where the plaintiff resides. The court can look to the pleadings to determine whether the nature and character of the suit are those of one for breach of warranty; the other three venue facts must be established by extrinsic proof using the standard of a preponderance of the evidence. *Hall v. Ford Motor Co.,* 565 S.W.2d 592, 594 (Tex.Civ.App.—Corpus Christi 1978, no writ). The suit here is one for breach of warranty, and appellee has established that appellant manufactures at least one of the products involved and that the suit was brought in the county of appellee's residence. The only question is whether the products are "consumer goods."

Both parties to this appeal cite and attempt to rely upon *Maintenance and Equipment Contractors v. John Deere Co.,* 554 S.W.2d 28 (Tex.Civ.App.—Houston [14th Dist.] 1977, writ dism'd). There the plaintiff was injured when a tractor leased to his employer by the defendant overturned while he was operating it. The manufacturer of the tractor, John Deere Co., was also made a defendant and secured a change of venue to the county of its residence. The lessor filed a third party action against the manufacturer who again asserted a plea of privilege. That plea was controverted by the lessor pursuant to, inter alia, subdivision 31 of Article 1995. The plea as to the third party action was also granted and that cause transferred. On appeal, the court was confronted with the question whether the tractor constituted "consumer goods" as that term is used in subdivision 31. The manufacturer contended that it was not, because the applicable definition of that term is that found in sec. 9.109 of the Texas Business and Commerce Code (hereinafter "TBCC"), to-wit: "Goods are . . . 'consumer goods' if they are used or bought for use primarily for personal, family or household purposes . . . ." In rejecting that contention, the court stated:

"Since the term 'consumer goods' is not defined in our venue statute, it should be construed in the sense in which it is understood in common language. *See Ex parte Mehlman,* 127 Tex.Cr.R. 257, 75

S.W.2d 689, 690 (Tex.Cr.App.1934); that is, a broad interpretation should be used. The Uniform Commercial Code distinctions between consumer goods, equipment, farm products and inventory are very narrow and have been written into article 9 which applies generally to transactions involving security interests. . .

We also note that subdivision 5(b) of our venue statute appears to accept a broad definition of consumer goods and specifically mentions goods used for agricultural purposes."

The court went on to hold that the tractor was consumer goods.

Appellant argues that the commercial products involved here are not "consumer goods" if that term is "construed in the sense in which it is understood in common language." It states in its brief, "no common understanding of the term 'consumer goods' includes a component product which is designed to be mixed with another product which is then incorporated into the construction process of a swimming pool built by a commercial contractor in the regular pursuit of its business purpose." Further, appellant contends that the court in *John Deere*, supra, was incorrect in rejecting the TBCC Article 9 definition, if it was rejected because said definition applies only to the narrow meaning required for secured transactions. It points out that Article 2 of the TBCC adopts the Article 9 definition for commercial transactions, a point ignored by the *John Deere* court. Appellant also points to the restrictive definitions of "consumer product" in the Consumer Product Safety Act, 15 U.S.C. sec. 2052(a)(1), and in the Consumer Product Warranties Act, 15 U.S.C. sec. 2301(1).

■ There are certain rules relating to the general venue statute which are well settled. The predominant purpose of the statute is to give a person who has been sued the right to defend such suit in the county of his residence, except under well-defined exceptions. To deprive a defendant of this right, the case filed against him must *clearly* come within one of the exceptions to the statute. Venue may not be

sustained by implication. *Burtis v. Butler Brothers*, 148 Tex. 543, 226 S.W.2d 825, 828 (1950). The defendant's right to be sued in the county of his residence is a valuable right, and he may not be lightly deprived of it. *Gilley v. Morse*, 375 S.W.2d 569, 570 (Tex.Civ.App.—Dallas 1964, no writ). The exceptions to this right are to be strictly construed. *Mims v. East Texas Production Credit Association*, 496 S.W.2d 682, 686 (Tex.Civ.App.—Tyler 1973, writ dism'd). This most valuable right should not be taken away by virtue of technicalities or on a doubtful or strained construction of any exception provision. *Barnwell v. Fox & Jacobs Construction Co.*, 469 S.W.2d 199, 204 (Tex.Civ.App.—Dallas 1971, no writ). It has been said that all doubts must be resolved in favor of the general venue rule giving the defendant the right to be sued in his home county. *Briarcliff, Inc. v. Texas Automatic Sprinklers, Inc.*, 472 S.W.2d 860, 862 (Tex.Civ.App.—Dallas 1971, no writ).

■ In construing a statutory word or phrase, the court may take into consideration the meaning of the same or similar language used elsewhere in the act or in another act of similar nature. Where the same or a similar term is used in the same connection in different statutes, it will be given the same meaning in one that it has in another, unless there is something to indicate that a different meaning was intended. This rule applies with particular force where the meaning of a word as used in one act is clear or has been judicially determined, and the same word is subsequently used in another act pertaining to the same subject. 53 Tex.Jur.2d sec. 153 at pp. 220–1; *Texas Bank & Trust Co. v. Austin*, 115 Tex. 201, 280 S.W. 161, 162 (1926); *Brown v. Darden*, 121 Tex. 495, 50 S.W.2d 261, 263 (1932); *Holloway v. Texas Indemnity Insurance Co.*, 40 S.W.2d 75, 77 (Tex.Comm'n.App.1931); *Alexander v. State*, 84 Tex.Cr.R. 75, 204 S.W. 644, 647 (1918); *Therwhanger v. Therwhanger*, 175 S.W.2d 704, 706 (Tex.Civ.App.—Eastland 1943, no writ).

In applying these rules to the instant case, we note that Article 9 (sec. 9.109) of

the TBCC defines "consumer goods" as those "used or bought for use primarily for personal, family or household purposes." This definition is made applicable to Article 2 of that Code by sec. 2.103(c), and appellee herein, although not citing the warranty provisions of the said Article 2, has nevertheless stated a cause of action thereunder. Other Texas statutes whose definitions are of interest and persuasion are the Home Solicitation Transactions Act, Articles 5069–13.01 et seq., Tex.Rev.Civ.Stat.Ann., which defines "consumer" as "an individual who seeks or acquires real or personal property, services, money, or credit for personal, family, or household purposes," and the Debt Collection Act, Articles 5069–11.01 et seq., Tex.Rev.Civ.Stat.Ann., wherein "consumer" is defined as "an individual who owes or allegedly owes a debt created primarily for personal, family, or household purposes."

We feel that the products involved here do not come within the ambit of the ordinary meaning of the term "consumer goods." Appellee contends that the definition of the word "consumer" in *Ex parte Mehlman*, cited in the quotation from *John Deere*, supra, should control. The court in that case turned to the dictionary for the definition of that word as " 'One who uses (economic) goods and so diminishes or destroys their utilities;—opposed to producer,' " and for the definition of "consume" as to "use up, expend, waste, devour." *Id.* 75 S.W.2d at 690. It argues, therefore, that since its employees combined the mortar and grout compounds to make a new, third substance and used it in placing tile, it "consumed" the products. It is well known, however, that the meaning of words and phrases change with time. The words "consumer" and "goods" had no distinctly expressed meaning in 1934, the year *Mehlman* was decided, other than their separate dictionary definitions. The word "consumer," and its compound "consumer goods," have, since the advent of the phenomenon known as "consumerism" and consumer legislation, acquired a new, distinct, and more narrow connotation in their ordinary meaning. In defining terms, we must not lose sight of the context in which they are used. We feel that their ordinary accepted meaning comes very close to the definitions given by the two federal statutes cited by appellant. "Consumer product," a term for all practical purposes synonymous with "consumer goods," is defined there as follows:

"[A]ny tangible personal property which is distributed in commerce and which is normally used for personal, family, or household purposes . . . ." 15 U.S.C. sec. 2301(1).

"[A]ny article, or component part thereof, produced or distributed (i) for sale to a consumer for use in or around a permanent or temporary household or residence, a school, in recreation, or otherwise, or (ii) for the personal use, consumption or enjoyment of a consumer in or around a permanent or temporary household or residence, a school, in recreation, or otherwise; but such term does not include—

"(A) any article which is not customarily produced or distributed for sale to, or use or consumption by, or enjoyment of, a consumer . . . ." 15 U.S.C. sec. 2052(a)(1).

Although the latter quoted statute does not define consumer, it is clear from the Congressional findings and purpose that the statute was meant to apply to persons incapable of anticipating risks and safeguarding themselves from injuries resulting from "consumer products."

While we do not deem it necessary here to promulgate a comprehensive definition of the term "consumer goods" as it is used in subdivision 31 of Article 1995, nor to adopt for that statute the precise definition of the term from another statute, we agree with appellant that the term does not include the products at issue here.

Even if the *John Deere* court was correct in stating that the term should be given a broad interpretation and that the TBCC definition was too narrow, the term need not be given so expansive a definition as to encompass a commercial product purchased by a business entity strictly for use by mixing with other materials in commercial construction.

Appellee cites *John Deere*, supra, *Beef Cattle Co. v. N. K. Parrish, Inc.*, 553 S.W.2d 220 (Tex.Civ.App.—Amarillo 1977, no writ), and *Trucker's Equipment, Inc. v. Sandoval*, 569 S.W.2d 518 (Tex.Civ.App.—Corpus Christi 1978, no writ), all of which hold various products to be consumer goods, to-wit: a tractor, cattle feed, and a hydraulic hose and coupling, respectively. We note, however, that all three involve products used for agricultural purposes. In *John Deere*, the court rejects the TBCC definition of "consumer goods," i. e., those used for "personal, family or household purposes," but quotes with approval subdivision 5(b), Article 1995, which, in limiting the term "consumer transaction," merely adds goods used for "agricultural" purposes to those used for "personal, family or household" purposes. In *Beef Cattle Co.*, involving subdivision 5(b), it was held that milo, purchased for use as cattle feed and clearly an agricultural product, was the subject of a "consumer transaction" as that term was defined in that subdivision, which states "a consumer transaction for goods . . . intended primarily for personal, family, household or agricultural use . . . ." In *Sandoval*, the court cites *John Deere* for the proposition that the subdivision 31 term "consumer goods" includes goods used for agricultural purposes and points out that the hydraulic hose and coupling were merely component parts of a cotton shredder and tractor, i. e., products used for agricultural purposes. Thus, these three cases may be viewed as authority for the expansion of the term "consumer goods" to include those used for agricultural, as well as personal, family or household purposes, but not as authority for such a sweeping expansion of that term as would be required to encompass the products with which we are concerned here.

Every word of a statute must be presumed to have been used for a purpose and every word must be given effect if reasonably possible. *Eddins-Walcher Butane Co. v. Calvert*, 156 Tex. 587, 298 S.W.2d 93, 96 (1957); *Oliver Bass Lumber Co., Inc. v. Kay and Herring Butane Gas Co., Inc.*, 524 S.W.2d 600, 603 (Tex.Civ.App.

—Tyler 1975, no writ). Appellant argues, with some merit, that in order for the term "consumer goods" to have meaning, there must be some goods that are not consumer goods. If too broad a definition is applied, then all goods may be considered consumer goods because they are virtually all eventually consumed. It should be borne in mind that "consumer goods" is not synonymous with "consumed goods" or "goods to be consumed."

Moreover, even if we were to adopt the broad definition as appellee argues, we do not agree with appellee's contention that it is the consumer of these goods. By the definition which it cites and relies upon, it is not the "one who uses [these] (economic) goods and so diminishes or destroys their utilities." Far from destroying the utility of these goods, appellee is the one who combines them and thereby imparts to them their utility as a product capable of performing their intended function, to-wit: to act as an adhesive to hold together tiles in commercial construction. Indeed, appellee may be more properly viewed as a producer than a consumer. It has taken two separate products and, by its own description, has mixed them together, thus altering their molecular structures and producing a new substance which is like neither of the two products prior to their combination. This is another aspect of the case before us which distinguishes it from *Beef Cattle Co. v. N. K. Parrish, Inc.*, supra, *Trucker's Equipment, Inc. v. Sandoval*, supra, and *John Deere*. It should be borne in mind that these products are specifically designed for use by professional tile layers only and not for use in the home by a do-it-yourself handyman. An additional noteworthy feature of these three cases, which distinguishes them from the instant case, is that they involve goods that are personal property throughout their existence. We are concerned here with two products which are mixed together and become a component part of real property, i. e., a swimming pool.

It would take little expansion of appellee's contention to require that any component part of any product constructed or

assembled by an intermediate party be considered consumer goods as to that party. In light of the prevailing meaning of "consumer goods," we are not inclined to apply so broad an interpretation to the term.

■ Accordingly, we hold that the mortar and grout compounds involved here, manufactured and sold by appellant and purchased by appellee, are not consumer goods so as to allow appellee, as plaintiff, to maintain venue for this action in the county of its residence pursuant to Article 1995, subdivision 31, supra. Appellant's point of error two is sustained.

The order of the trial court overruling appellant's plea of privilege is reversed, and the cause is hereby ordered transferred to Dallas County.