Tomas A. CHAVEZ, Appellant,

v.

MURREL'S WELDING WORKS, INC., Appellee.

No. 16077.

Court of Civil Appeals of Texas, San Antonio.

June 20, 1979.

Kermit Fox, Jr., San Antonio, for appellant.

Edward P. Fahey, Thomas H. Crofts, Jr., Groce, Locke & Hebdon, San Antonio, for appellee.

## OPINION

CADENA, Chief Justice.

Plaintiff, Tomas A. Chavez, appeals from an order of the district court of Atascosa County sustaining the plea of privilege filed by defendant, Murrel's Welding Works, Inc., and transferring the case to Hockley County.

Plaintiff's sole contention here is that his suit was properly filed in Atascosa County, the county of his residence, under subdivision 31 of the general venue statute, which provides, "[s]uits for breach of warranty by a manufacturer of consumer goods may be brought . . . in the county where the plaintiff or plaintiffs reside." Article 1995, Tex.Rev.Civ.Stat.Ann. (Vernon Supp. 1978–1979).

Plaintiff sustained physical injury when a "hot oil truck," manufactured by defendant and sold by it to plaintiff's employer, Associated Services, exploded.

A hot oil truck is used to heat oil as it comes from the well head or oil which has been stored in a tank. The oil, whether it comes directly from the well or from the storage tank, passes through hoses into lines located above the truck's "heater box." The heated oil is then passed through lines or hoses which lead to a storage tank. The purpose of the process is to reduce the viscosity of the oil and facilitate its transportation. Plaintiff's employer, as part of its business, furnished such oil heating services to its customers.

The trial court, after finding that the truck was not used for "personal, family, or

household purposes," concluded that it did not come within the category of "consumer goods" as that term is used in subdivision 31.

The venue statute contains no definition of "consumer goods." It is clear that the trial court, in interpreting the venue provision, adopted the definition found in § 9.109(1), Tex.Bus. & Com.Code Ann. (Vernon Supp. 1978–1979),[1] which defines "consumer goods" as goods "used or bought for use primarily for personal, family or household purposes."

Apparently, only two Texas cases have considered the meaning of "consumer goods" in subdivision 31. In *Maintenance and Equipment Contractors v. John Deere Co.*, the court, pointing out that the term is not defined in the venue statute, said that it should be construed "in the sense in which it is understood in common language" and that "a broad interpretation should be used." 554 S.W.2d 28, 32 (Tex. Civ.App.—Houston [14th Dist.] 1977, writ dism'd). No attempt was made to reconcile this conclusion with the rule that exceptions to the venue statute must be strictly construed in favor of the defendant. *See National Life Co. v. Rice*, 140 Tex. 315, 322, 167 S.W.2d 1021, 1025 (1943); *Stephens v. Dunn*, 417 S.W.2d 608, 612 (Tex.Civ.App.—Tyler 1967, no writ).

In *John Deere* plaintiff sought recovery for personal injuries sustained by him when a tractor, leased by his employer, overturned while plaintiff was operating it. The court pointed out that subdivision 5(b) of the venue statute applies to suits "founded upon a contractual obligation of the defendant to pay money arising out of or based upon a *consumer transaction for goods, services, loans, or extensions of credit intended primarily for personal, family, household or agricultural use*" (emphasis original). After referring to this as "a broad definition of consumer goods," the court concluded that the tractor in question "is a consumer good as contemplated under subdivision 31 . . . ." 554 S.W.2d at 32–33.

In *Trucker's Equipment, Inc. v. Sandoval*, 569 S.W.2d 518, 523 (Tex.Civ.App.—Corpus Christi 1978, no writ), the court interpreted *John Deere* as holding that "consumer goods" includes, for venue purposes under subdivision 31, "goods used for agricultural purposes."

Plaintiff in *John Deere* sought recovery only on theories of negligence and strict liability in tort. 554 S.W.2d at 29. It is, therefore, difficult to understand the necessity for examination of subdivision 31, since that subdivision applies only to suits based on breach of warranty. Perhaps the *John Deere* court had in mind the "implied warranty" theory which was used as the basis for imposing liability on the manufacturer in *Jacob E. Decker & Sons v. Capps*, 139 Tex. 609, 164 S.W.2d 828 (1942). However, today it cannot be said that a suit based on theories of negligence or strict liability in tort is a suit for breach of warranty.[2]

The *John Deere* opinion notes that the Code distinctions between consumer goods, equipment, farm products and inventory "are very narrow and have been written into article 9 [of the Code] which applies generally to transactions involving security interests." 554 S.W.2d at 32. Whether this

---

1. The Texas Business and Commerce Code will be identified in subsequent portions of this opinion simply as "Code."

2. "At the time of *Decker*'s writing, the consumer had little remedy for losses caused by defective products. To compensate for this lack of remedy, *Decker* created 'an implied warranty imposed by operation of law as a matter of public policy.' . . . This remedy has been described as, 'a freak hybrid born of the illicit intercourse of tort and contract.' . . The protection of Texas consumers no longer requires the utilization of an 'implied warranty as a matter of public policy.' Since the *Decker* decision, Texas has adopted section 402A of the Restatement (Second) of Torts and the Uniform Commercial Code . . . These adoptions furnish the user of defective products remedies which were unavailable at the time of *Decker*'s writing. Today, section 402A . . . and the Uniform Commercial Code rather than *Decker*'s 'implied warranty as a matter of public policy' should determine a manufacturer's liability." (citations omitted). *Nobility Homes of Texas, Inc. v. Shivers*, 557 S.W.2d 77, 78 (Tex.1977).

fact influenced the court in its determination that the definition of "consumer goods" should be expanded for venue purposes by adding goods intended for agricultural use to the definition found in § 9.109(1) is not readily determinable, but it should be pointed out that § 2.103(c) of the Code expressly provides that the definition of "consumer goods" found in § 9.109 apply to Chapter 2 of the Code. The provisions of the Code concerning warranties in connection with sales of goods (§§ 213 and 214) appear in Chapter 2.

Although *John Deere* cannot be regarded as being a suit based on warranty, *Sandoval* appears to be based, at least in part, on implied warranty. 569 S.W.2d at 522. That case, then, must be interpreted as holding that "consumer goods," as that term is used in subdivision 31, includes goods purchased to be used for agricultural purposes.

The Deceptive Trade Practices Act (DTPA), §§ 17.41–17.63 of the Code (Vernon Supp. 1978–1979), contains no definition of the term "consumer goods," but it contains the following definitions of the two component words of that term: "(1) 'Goods' means tangible chattels or real property purchased or leased for use. . . (4) 'Consumer' means an individual, partnership, corporation, or governmental entity who seeks or acquires by purchase or lease, any goods or services." *Id.* at § 17.45.

We decline to construct a definition of "consumer goods" by combining the separate definitions of "goods" and "consumer" found in § 17.45. If a definition is thus constructed and then used as the definition of "consumer goods" in subdivision 31, the result would be to make subdivision 31 applicable to "suits for breach of warranty by a manufacturer of tangible chattels or real property." While some manufacturers may produce tangible chattels which, through annexation to realty, are considered part of the realty for certain purposes, manufacturers do not produce real property.[3]

---

3. A person who attempts to define "flying mare" by combining the definitions of "flying" and "mare" would seek to find a flying mare somewhere in the sky (probably with Pegasus lurking nearby), rather than in a wrestling ring.

Whether we apply the definition found in § 9.109(1) of the Code, or the "broad" definition which *John Deere* found in subdivision 5(b) of the venue statute, a subdivision which does not contain the term "consumer goods," it is clear that the hot oil truck in question was not a consumer good. Plaintiff presents no point questioning the sufficiency of the evidence to support the finding that the truck was not used for "personal, family or household purposes," nor does he contend that it was used for agricultural purposes.

The judgment of the trial court is affirmed.

A person relying on this method of definition would be astounded when told that a "backseat driver" often sits in the front seat and does no driving at all.