

# ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

December 13, 2004

Mr. Lowry Mays, Chair
Board of Regents
The Texas A&M University System
Post Office Box C-1
College Station, Texas 77843

Opinion No. GA-0281

Re: Whether the Texas Workforce Commission Civil Rights Division is properly interpreting the equal employment opportunity training requirement of Labor Code section 21.556(a) (RQ-0240-GA)

Dear Mr. Mays:

The Texas A&M University System ("TAMU") asks whether the Texas Workforce Commission Civil Rights Division (the "Commission") is properly interpreting the equal employment opportunity training requirement of Labor Code section 21.556(a).[1]

## I. Background

Chapter 21 of the Labor Code prohibits employment discrimination in Texas. Its general purposes include providing for the execution of federal antidiscrimination laws and identifying and creating a state authority to enforce federal antidiscrimination policies. *See* TEX. LAB. CODE ANN. § 21.001(1)-(2) (Vernon 1996). To this end, chapter 21 establishes the Texas Workforce Commission Civil Rights Division, formerly the Texas Commission on Human Rights,[2] as the agency that may enforce the chapter and adopt procedural rules to carry out its purposes and policies. *See id.* § 21.003(a)(2), (7) (Vernon Supp. 2004-05).

---

[1]*See* Letter from Delmar L. Cain, General Counsel, The Texas A&M University System, to Honorable Greg Abbott, Texas Attorney General (June 14, 2004) [hereinafter Request Letter]; Letter attached to Request Letter from John D. Moore, General Counsel, Texas Workforce Commission, to Delmar L. Cain, General Counsel, The Texas A&M University System (June 7, 2004) [hereinafter Exhibit 1]; Letter attached to Request Letter from Katherine A. Antwi, General Counsel, Texas Commission on Human Rights, to W. Jan Faber, Assistant General Counsel, The Texas A&M University System (Aug. 20, 2003) [hereinafter Exhibit 2] (Request Letter and Exhibits on file with Opinion Committee, *also available at* http://www.oag.state.tx.us).

[2]*See* TEX. LAB. CODE ANN. § 21.0015 ("The powers and duties exercised by the Commission on Human Rights under this chapter are transferred to the Texas Workforce Commission civil rights division. A reference in this chapter to the 'commission' means the Texas Workforce Commission civil rights division."); *see also id.* §§ 301.151-.153 (Vernon Supp. 2004-05) (establishing the Civil Rights Division as an independent division in the Texas Workforce Commission governed by the "human rights commission").

Relevant to TAMU's inquiry, chapter 21 outlines a formal process by which a person claiming to be aggrieved by an unlawful employment practice may file a complaint with the Commission and have that complaint reviewed to determine if there is reasonable cause to believe that the employment practice was discriminatory. *See generally id.* §§ 21.201-.211 (Vernon 1996) (subchapter E). Before the Commission will review a complaint, the complaint must meet certain statutory requirements, which include providing the facts that establish the basis of the complaint. *See id.* § 21.201. If the Commission determines that there is reasonable cause to believe that discrimination has likely occurred, then the Commission will endeavor to eliminate the alleged unlawful employment practice by informal dispute resolution methods. *See id.* § 21.207. Should that fail, the Commission may file a civil suit against the respondent, *see id.* § 21.251, or provide the complainant with written notice of the complainant's right to file a civil action, *see id.* § 21.252.

TAMU asks about section 21.556 of the Labor Code, which prescribes equal employment opportunity training for state agencies that have received three or more employment discrimination complaints within a fiscal year. *See* Request Letter, *supra* note 1, at 1; *see also* TEX. LAB. CODE ANN. § 21.556 (Vernon Supp. 2004-05). The Commission is charged with adopting minimum standards for a training program and must approve a person, entity, or state agency to provide training so long as the program complies with the Commission's standards. *See* TEX. LAB. CODE ANN. § 21.556(d) (Vernon Supp. 2004-05). Agencies required to participate in the training program must pay the program's costs or reimburse the Commission or state agency that provides the training through interagency contract. *See id.* § 21.556(e). If the Commission does not conduct the training for a state agency, that state agency must provide the Commission with documentation of the training. *See id.* § 21.556(c).

Specifically, TAMU inquires about section 21.556(a), which establishes the circumstances under which a state agency must receive the required equal employment opportunity training:

> A state agency that receives three or more complaints of employment discrimination in a fiscal year, *other than complaints determined to be without merit*, shall provide a comprehensive equal employment opportunity training program to appropriate supervisory and managerial employees.

*Id.* § 21.556(a) (emphasis added). Chapter 21 does not define the term "merit," nor does it establish a process for assessing whether a complaint is "without merit." However, a Commission rule establishes a process for assessing a complaint's merit for this purpose, which provides in part:

> (a) The Commission will make a determination if a complaint of employment discrimination is with or without merit by analyzing complaints filed by employees of state agencies or applicants for employment with state agencies, with either the Commission or the United States Equal Employment Opportunity Commission ("EEOC"), to ascertain whether the complainant has met his or her burden of providing sufficient factual evidence to establish the elements of a prima facie case of employment discrimination as

> delineated by the United States Supreme Court ("Supreme Court").
> If a complaint is determined to have met the elements of a prima facie
> case, then the complaint will be administratively processed [through]
> the Commission's or EEOC's investigation procedures. If the
> Commission makes a determination that a complaint has met both a
> Supreme Court [prima facie] test . . . and an administrative processing
> test of merit, a state agency will be determined to have a complaint of
> merit assessed against them.
>
> (b) If a complainant . . . fails to meet his or her burden of establishing
> the elements of a prima facie case as outlined by the Supreme Court,
> is prevented from filing a complaint for jurisdictional reasons, or
> provides self-defeating evidence on the face of his or her complaint
> that shows the complaint is defective, then the complaint will not be
> administratively processed nor determined to be with merit.

29 TEX. REG. 3653 (2004) (to be codified at 40 TEX. ADMIN. CODE § 819.18(a)-(b)) (the "Rule").[3]

TAMU informs us that it has been notified by the Commission that it must provide equal employment opportunity training because three or more complaints of employment discrimination were filed against TAMU during the 2004 fiscal year. *See* Request Letter, *supra* note 1, at 1; *see also* TEX. LAB. CODE ANN. § 21.556(a) (Vernon Supp. 2004-05).[4] TAMU contends, however, that the Commission's notification is baseless because the Commission's test for determining merit contravenes chapter 21. *See* Request Letter, *supra* note 1, at 1. TAMU suggests that a discrimination complaint triggers the section 21.556(a) training requirement only if the Commission has determined in the complaint review process outlined in chapter 21 that there is "reasonable cause" to believe that discrimination has occurred. *See id.* at 6; *see also* TEX. LAB. CODE ANN. §§ 21.204-.206 (Vernon 1996). By contrast, the Commission maintains that the process for determining a complaint's merit for purposes of the training requirement is distinct from a finding of reasonable cause.[5] TAMU asks, essentially, which of the two interpretations is correct. *See* Request Letter, *supra* note 1, at 1. TAMU also questions the Commission's interpretation of the Rule. *See id.* at 5-6.

---

[3]In its letter, TAMU refers to section 323.8 as the rule in question. Section 323.8 was renumbered as section 819.18. *See* 29 TEX. REG. 3653 (2004) (to be codified at 40 TEX. ADMIN. CODE § 819.18). We will refer to the rule by its most recent codification.

[4]TAMU notes: "The letter from the commission did not identify or provide any details concerning the complaints." Request Letter, *supra* note 1, at 8. Instead, the letter only identified the complaints as having been "filed." *See id.* We were not provided with a copy of this March letter, but we assume for the purposes of this opinion that the Commission used "filed" as shorthand to describe complaints that had been filed and deemed meritorious by the Commission according to section 21.556(a) and the Rule. Neither the Commission nor TAMU suggests that the training requirement may be triggered merely by filing a complaint. We agree. *See* TEX. LAB. CODE ANN. § 21.556 (Vernon Supp. 2004-05); 29 TEX. REG. 3653 (2004) (to be codified at 40 TEX. ADMIN. CODE § 819.18(a)-(b)).

[5]*See* Brief from Don Ballard, Deputy General Counsel, Texas Workforce Commission, to Honorable Greg Abbott, Texas Attorney General, at 4 (Aug. 2, 2004) (on file with Opinion Committee) [hereinafter Commission Brief].

## II.    Analysis

TAMU suggests that the Rule exceeds the Commission's statutory authority. To address its concerns, we must interpret the relevant Labor Code provisions and determine whether the Rule comports with the Commission's statutory authority.

In construing section 21.556 and chapter 21, we must give effect to the legislature's intent. *See* TEX. GOV'T CODE ANN. §§ 311.021, .023 (Vernon 1998); *Albertson's, Inc. v. Sinclair*, 984 S.W.2d 958, 960 (Tex. 1999). To do so, we must first attempt to construe statutes according to their plain language, *see In re Canales*, 52 S.W.3d 698, 702 (Tex. 2001), and must consider section 21.556 in the context of chapter 21 as a whole, *see Helena Chem. Co. v. Wilkins*, 47 S.W.3d 486, 494 (Tex. 2001); *see also* TEX. GOV'T CODE ANN. § 311.011(a) (Vernon 1998) (words and phrases to be read in context). We may also consider, among other things, a statute's objectives, the legislative history, the consequences of a particular construction, and its administrative construction. *See* TEX. GOV'T CODE ANN. § 311.023 (Vernon 1998); *see also id.* § 311.021(2)-(4) ("In enacting a statute, it is presumed that . . . the entire statute is intended to be effective[,] a just and reasonable result is intended[, and] a result feasible of execution is intended . . . .").

In deciding whether the Commission, an administrative agency, has exceeded its rulemaking powers, the determinative factor is whether the rule's provisions are "in harmony" with the general objectives of the statute. *See Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 750 (Tex. 1995). In determining whether a rule is in harmony with an act's general objectives, courts look to all applicable provisions of that act, rather than one particular section. *See Gerst v. Oak Cliff Sav. & Loan Ass'n*, 432 S.W.2d 702, 706 (Tex. 1968). Moreover, construction of a statute in the rules of the administrative agency charged with the statute's enforcement "is entitled to 'serious consideration,' so long as the construction is reasonable and does not contradict the plain language of the statute." *Tarrant Appraisal Dist. v. Moore*, 845 S.W.2d 820, 823 (Tex. 1993) (quoting *Standford v. Butler*, 181 S.W.2d 269, 273 (Tex. 1944)); *see also* Tex. Att'y Gen. Op. No. GA-0233 (2004) at 4 (stating that so long as an agency's interpretation of a statute is a reasonable one that does not do violence to the statutory language, this office will defer to it).

### A.    Whether the Rule Is Invalid for Failing to Equate Merit with Reasonable Cause

First we address TAMU's contention that the Commission has exceeded its rulemaking authority under section 21.556 because the Rule does not equate the statutory phrase "complaints determined to be without merit" with complaints for which the Commission has found no reasonable cause. *See* Request Letter, *supra* note 1, at 2-3; *see also* TEX. LAB. CODE ANN. § 21.556(a) (Vernon Supp. 2004-05).

Section 21.204 of the Labor Code requires the Commission's executive director, or the director's designee, to investigate an employment discrimination complaint filed pursuant to chapter 21 and to "determine if there is reasonable cause to believe that the respondent engaged in an unlawful employment practice as alleged in the complaint." TEX. LAB. CODE ANN. § 21.204(a) (Vernon 1996). Though chapter 21 does not describe what form an investigation is to take, its plain language indicates that the investigation is to go beyond the allegations stated in the complaint and

will consist of a review of the evidence supporting the allegations. *See id.* §§ 21.205 (requiring the executive director or the director's designee on a finding that a complaint does not show reasonable cause to issue a written determination "that *the evidence* does not support the complaint"), .206 (requiring the executive director or the director's designee on a finding that a complaint does show reasonable cause to review with a panel of three commissioners "*the evidence* in the record") (emphasis added). Therefore, a determination of reasonable cause necessarily means that a complainant has met the threshold burden of facially stating a legitimate claim and has offered some proof to support a finding by the Commission that discrimination has likely occurred.

The Commission contends that the legislature intended to create two thresholds: when met, the first establishes a complaint as meritorious for purposes of the training requirement, and the second supports a finding of reasonable cause. *See* Commission Brief, *supra* note 5, at 5. The statute's plain language validates this position. Section 21.556(a) does not use the term "reasonable cause"; rather, it uses the term "merit." *See* TEX. LAB. CODE ANN. § 21.556(a) (Vernon Supp. 2004-05) ("complaints . . . other than complaints determined to be without merit"). We presume that every word in a statute is used for a purpose. *See Jessen Assocs., Inc. v. Bullock,* 531 S.W.2d 593, 600 (Tex. 1975). Given the statutory language, it is reasonable for the Commission to distinguish an assessment of "merit" from an assessment of "reasonable cause."

The legislative history also supports the Commission's position. Section 21.556 was adopted in 1999 following the Sunset Commission's review of the Texas Commission on Human Rights. *See* Act of May 17, 1999, 76th Leg., R.S., ch. 872, § 15, 1999 Tex. Gen. Laws 3556, 3565; HOUSE COMM. ON STATE AFFAIRS, BILL ANALYSIS, Tex. H.B. 1976, 76th Leg., R.S. (1999) (enrolled version, "Background and Purpose") ("After reviewing the commission, the Sunset Advisory Commission had recommended its continuation and other statutory modifications."). According to the Sunset Advisory Commission Staff Report, the state has an interest in preventing and resolving discriminatory activity before it results in costly litigation. *See* SUNSET ADVISORY COMMISSION STAFF REPORT, TEXAS COMMISSION ON HUMAN RIGHTS, at 7 (October 1998). To this end, the Sunset Advisory Commission advised the legislature to adopt the language of section 21.556(a), which had formerly been contained in an appropriations rider,[6] to "ensure that the Commission continues to provide comprehensive training to familiarize all state agencies and public institutions of higher education with [equal employment opportunity] laws and to prevent employment discrimination from occurring." *Id.* at 26. Thus, section 21.556(a)'s purpose is not to remedy particular instances of discrimination or penalize state agencies after the fact. Rather, its purpose is to require training of state agency personnel in order to prevent employment discrimination. When viewed in the context of this purpose, it is reasonable to conclude that the legislature did not intend "merit" to rise to the level of "reasonable cause." The Commission's construction of "without merit" not to require a "reasonable cause" finding gives substance to and is consistent with section 21.556(a)'s broad preventative purpose.

Finally, the Commission's interpretation of "without merit" is consistent with the legislature's use of the phrase in another statute. Section 1071.402 of the Occupations Code

---

[6]*See* Tex. Att'y Gen. Op. No. DM-497 (1998) at 6 (concluding that an appropriations act rider, similar to what is now section 21.556, attempted to amend general law in violation of article III, section 35 of the Texas Constitution).

authorizes the Texas Board of Professional Land Surveying to investigate formal complaints filed against licensed land surveyors for alleged violations of the Professional Land Surveying Practices Act. *See* TEX. OCC. CODE ANN. § 1071.402 (Vernon 2004). Section 1071.402 requires the board to assign an employee or to contract with an investigator to investigate each alleged violation. *See id.* § 1071.402(b). The person investigating the alleged violation may dismiss a complaint that is *without merit*, or determine whether a licensed land surveyor has committed the violation and recommend sanctions to the board. *See id.* § 1071.402(c)(1)-(2) (emphasis added). In this instance, the legislature has used "merit" to indicate a complaint that facially states a claim, which if proven would constitute a violation of that act. Where the same or similar word is used "in the same connection in different statutes," it will be given the same meaning in one as it has in the other, unless there is something to indicate that a different meaning was intended. *L&M-Surco Mfg., Inc. v. Winn Tile Co.*, 580 S.W.2d 920, 926 (Tex. Civ. App.–Tyler 1979, writ dism'd).

In sum, because it is consistent with the statute's plain language, comports with the statute's legislative purpose, and is consistent with the legislature's use of the phrase "without merit" in a similar statutory context, we conclude that the Commission's interpretation of section 21.556 to distinguish between an assessment of "merit" and an assessment of "reasonable cause" is reasonable.

## B.     Whether the Rule Misapplies the United States Supreme Court Test

TAMU also argues that the Rule fails to incorporate legal principles for resolving discrimination complaints that are required by the United States Supreme Court. *See* Request Letter, *supra* note 1, at 4. Specifically, TAMU argues that the Commission misapplies the *McDonnell Douglas* test. *See id.*; *see also McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

The *McDonnell Douglas* test outlines a burden-shifting scheme by which the parties' evidence is evaluated. *See McDonnell Douglas*, 411 U.S. at 801-03. The scheme requires the plaintiff in an employment discrimination suit first to establish a prima facie case. *See id.* If that burden is satisfied, the defendant then must articulate a legitimate nondiscriminatory reason for taking the employment action; if the defendant satisfies that burden, the plaintiff must then prove that the defendant's stated reason is a pretext for discrimination. *See id.*

The Rule requires the Commission, in assessing whether a claim is with or without merit, "to ascertain whether the complainant has met [the complainant's] burden of providing sufficient factual evidence *to establish the elements of a prima facie case* of employment discrimination as delineated by the United States Supreme Court." 29 TEX. REG. 3653 (2004) (to be codified at 40 TEX. ADMIN. CODE § 819.18(a)) (emphasis added). TAMU suggests that the Rule is invalid because the Commission has selectively picked the first part of the *McDonnell Douglas* test, which the Commission favors, while ignoring the remainder of the test. *See* Request Letter, *supra* note 1, at 4-5.

We have already established that the Commission has reasonably construed the term "merit" in section 21.556(a) to be distinct from the term "reasonable cause." The *McDonnell Douglas* test establishes the burden of proof in the context of a trial on the merits to determine whether discrimination has occurred. *See McDonnell Douglas*, 411 U.S. at 801-03 (requiring the plaintiff

and defendant to come forward with evidence). Section 21.556(a) does not require the Commission to use the *McDonnell Douglas* test to determine whether a complaint triggers the training requirement, and the Rule reasonably incorporates only the test's first part.

### C.    Whether the Commission is Misinterpreting the Rule

Finally, TAMU argues that even if the Commission is authorized to adopt the Rule, the Commission is misinterpreting it. *See* Request Letter, *supra* note 1, at 5-6. In particular, TAMU notes that the Rule also includes a second part, an "administrative processing test" of merit, which the Rule fails to define. *See id.* at 5. The Rule's section 819.18(a) reads in relevant part:

> If a complaint is determined to have met the elements of a prima facie case, then the complaint will be *administratively processed [through]* the Commission's or EEOC's *investigation procedures.* If the Commission makes a determination that a complaint has met both a Supreme Court [prima facie] test . . . and an *administrative processing test of merit*, a state agency will be determined to have a complaint of merit assessed against them.

29 TEX. REG. 3653 (2004) (to be codified at 40 TEX. ADMIN. CODE § 819.18(a)) (emphasis added). In a letter to TAMU, Commission staff clarified this part of the Rule by stating that it addresses the Commission's jurisdiction over a complaint. *See* Request Letter, *supra* note 1, at 5; Exhibit 2, *supra* note 1. That is, if the complaint falls within the Commission's jurisdiction, then the complaint passes the administrative processing test of merit. *See* Request Letter, *supra* note 1, at 5-6; Exhibit 2, *supra* note 1. TAMU counters that this explanation is inconsistent with the Rule. *See* Request Letter, *supra* note 1, at 6. Instead, TAMU asserts that this language in the Rule should tie the "administrative processing" test of merit to formal investigation procedures outlined in chapter 21 of the Labor Code. *See id; see also* TEX. LAB. CODE ANN. § 21.204(a) (Vernon 1996) (directing the Commission to investigate an employment discrimination complaint for reasonable cause). Thus, TAMU argues that the Rule itself necessarily requires a finding of reasonable cause before a complaint can be counted as meritorious. *See* Request Letter, *supra* note 1, at 6.

We construe administrative rules in the same way as statutes, and an agency's interpretation of its own rule is entitled to deference. *See Pub. Util. Comm'n v. Gulf States Utils. Co.*, 809 S.W.2d 201, 207 (Tex. 1991). However, if an agency fails to follow the clear, unambiguous language of its own regulation, it exceeds its authority. *See id.*

Here, we question the Commission's assertion that the administrative processing test of merit is nothing more than a finding that the Commission has jurisdiction over a complaint. *See* Request Letter, *supra* note 1, at 5-6; Exhibit 2, *supra* note 1.[7] The Rule's subsection (b) reads:

---

[7]We rely on the Commission's letter attached to the TAMU request letter as Exhibit 2. *See* Exhibit 2, *supra* note 1. The Commission did not address the meaning of "administrative processing test of merit" in its brief to this office. *See* Commission Brief, *supra* note 5.

> If a complainant . . . *fails to meet his or her burden of establishing the*
> *elements of a prima facie case* as outlined by the Supreme Court, *is*
> *prevented from filing a complaint for jurisdictional reasons,* or
> provides self-defeating evidence on the face of his or her complaint
> that shows the complaint is defective, *then the complaint will not be*
> *administratively processed* nor determined to be with merit.

29 TEX. REG. 3653 (2004) (to be codified at 40 TEX. ADMIN. CODE § 819.18(b) (emphasis added)). By its plain language, subsection (b) suggests that when the Commission lacks jurisdiction over a complaint, the complaint will not be administratively processed. Because subsection (b) suggests that establishing jurisdiction is a prerequisite to a complaint being administratively processed, the Rule's language does not appear to support the Commission's construction that administrative processing is merely a determination of jurisdiction. Nevertheless, we disagree that this part of the Rule necessarily requires a finding of reasonable cause before an employment discrimination complaint can be counted as meritorious. Nothing in the Rule supports the construction that meeting the "administrative processing test of merit" is equivalent to a reasonable cause finding.

In sum, the Commission does not appear to have given a meaning to the "administrative processing test of merit" that is consistent with the Rule as a whole. However, we cannot agree with TAMU that this part of the Rule limits the Commission to counting only those complaints for which it has found reasonable cause in determining that an agency must provide equal employment opportunity training under section 21.556(a).

## S U M M A R Y

Section 21.556(a) of the Labor Code requires a state agency to provide equal employment opportunity training after three employment discrimination complaints have been filed against the agency other than complaints determined to be without merit. Section 21.556 does not require that the Texas Workforce Commission Civil Rights Division find reasonable cause that discrimination has likely occurred in order to determine that a complaint counts toward the training requirement. The Texas Workforce Commission Civil Rights Division rule establishing a procedure to determine whether a complaint is without merit reasonably construes section 21.556(a). However, the Commission's interpretation of the rule must be consistent with the rule's plain language.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Daniel C. Bradford
Assistant Attorney General, Opinion Committee