**BOULDER CREEK ACADEMY and Sheila Tart–Zelvin, Appellants**

v.

**Art KLINE, Bridget Kline, and Davis Kline, Appellees.**

No. 05–11–01361–CV.

Court of Appeals of Texas, Dallas.

July 25, 2012.

Katherine Khristine Elrich, Frank Alvarez, Kimberly Wilson, Hermes, Sargent Bates, L.L.P., Dallas, TX, for Appellants.

Jerry Mark Perrin, The Perrin Law Firm, P.C., Peter D. Marketos, Reese Gordon Marketos, Dallas, TX, for Appellees.

Before Justices MORRIS, O'NEILL, and LANG–MIERS.

## OPINION

Opinion By Justice O'NEILL.

This is an interlocutory appeal from an order denying appellant's motion to dismiss. In two issues, Boulder Creek Academy and Sheila Tart–Zelvin contend the trial court erred (1) in denying their motion to dismiss because the claims filed by Art Kline, Bridget Kline, and Davis Kline are health care liability claims and the Klines failed to file an expert report as required by Texas Civil Practice and Remedies Code section 74.351, and (2) by refus-

ing to admit exhibits into evidence at the hearing on the motion to dismiss. For the following reasons, we affirm the trial court's order.

*Background*

Art and Bridget Kline decided to send their sixteen year-old son, Davis Kline, to school at Boulder Creek Academy ("BCA"), a boarding school in Idaho, in January 2006. The Klines were referred to BCA by Dr. John Edlin, a Dallas physician. The Klines were informed by employees, agents, and representatives of BCA that BCA would provide Davis with a college preparatory education while learning life-coping skills. Some of the representations, on which the Klines relied, were made by Sheila Tart–Zelvin who claimed to be an education consultant in Dallas, Texas.

After Davis began attending BCA, the Klines contend BCA supervised and monitored telephone calls and written communications between Davis and his parents. BCA made representations regarding Davis' condition and behavior to his parents. Davis Kline complains he was unable to get help from his parents when he needed it. Davis left BCA in the Summer of 2007 and the Klines claim Davis had not advanced academically or psychologically but instead had been caused harm.

Art Kline, Bridget Kline, and Davis Kline (collectively "the Klines") brought this suit against BCA and Sheila Tart–Zelvin for violations under the Texas Deceptive Trade Practices Act, negligence, fraud, and misrepresentation. In response, BCA initially filed a special appearance and answer challenging personal jurisdiction since the alleged mistreatment occurred in Idaho, where BCA is located. After the trial court denied their special appearance, BCA filed a motion to dismiss for failure to provide an expert report within the prescribed time period in accor-

dance with Chapter 74 of the Texas Civil Practice and Remedies Code. After a hearing on the motion to dismiss, the trial court denied the motion and now BCA brings this interlocutory appeal.

*Standard of Review and Applicable Law*

Generally, we review a trial court's order granting or denying a motion to dismiss under an abuse of discretion standard. *Am. Transitional Care Ctrs. of Tex., Inc. v. Palacios,* 46 S.W.3d 873, 875 (Tex.2001); *Bioderm Skin Care, LLC v. Sok,* 345 S.W.3d 189, 190 (Tex.App.-Dallas 2011, pet. granted). However, when the issue is whether the claim is a health care liability claim under Chapter 74, we review the order de novo. *Bioderm,* 345 S.W.3d at 190.

Under Chapter 74, a "health care provider" is "any person, partnership, professional association, corporation, facility, or institution duly licensed, certified, registered, or chartered by the State of Texas to provide health care, . . . ." TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(12)(A) (West Supp.2011). The term includes an officer, director, shareholder, member, partner, manager, owner, or *affiliate* of a health care provider or physician. *See id.* at § 74.001(a)(12)(B) (emphasis added). "Affiliate" means a person who, directly or indirectly, through one or more intermediaries, controls, is controlled by, or is under common control with a specified person, including any direct or indirect parent or subsidiary. *Id.* at § 74.001(a)(1). Finally, the Act defines "control" as "the possession, directly or indirectly, of the power to direct or cause the direction of the management and policies of the person, whether through ownership of equity or securities, by contract, or otherwise. *Id.* at § 74.001(a)(3).

*Analysis*

BCA contends the claims brought by the Klines are health care liability claims which would require the Klines to meet the Chapter 74 requirement to file an expert report on or before 120 days from the date of filing their lawsuit. TEX. CIV. PRAC. & REM.CODE ANN. § 74.351 (West 2011). The Klines respond that BCA is not a health care provider, nor an affiliate of a health care provider, as defined by Chapter 74. Therefore, we must determine if BCA qualifies as a health care provider under Chapter 74.

BCA is not "duly licensed, certified, registered, or chartered by the State of Texas." *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(12)(A). BCA is licensed by the Idaho Department of Health and Welfare noting that the facility is licensed to operate as a children's residential care facility. However, BCA contends they are *affiliated* with a Texas facility. *See id.* at § 74.001(a)(12)(B). The record includes an affidavit of Paul Johnson, CEO of BCA, as being an employee of UHS of Delaware, Inc. who "oversaw the implementation of and approved all policies and procedures in place at BCA." The record also includes an affidavit of Gail Oberta, CEO of Meridell Achievement Center ("Meridell") in Liberty Hill, Texas, who is also employed by UHS of Delaware, Inc. and oversaw "the implementation of and approved of all policies and procedures in place at Meridell." Ms. Oberta's affidavit states UHS of Delaware, Inc. has a management agreement with Meridell. Thus, the record reflects that both CEO's of BCA and Meridell are employees of UHS of Delaware, Inc.

However, while the record reflects BCA and Meridell do have a tenuous relationship, what is not evidenced by the record is what, if any, control or common control UHS of Delaware, Inc. has in regard to BCA and Meridell. *See* TEX. CIV. PRAC. & REM.CODE ANN. § 74.001(a)(1) (requiring control). The record also reflects an oral deposition of Matthew Klein, vice presi-

dent and general counsel for UHS of Delaware. Mr. Klein explained Universal Health Services, Inc. is a stock-holding entity and the parent company of many wholly owned subsidiaries, one being UHS of Delaware. Mr. Klein further stated that BCA is a subsidiary of UHS of Kootenai and that "UHS, Inc. does not operate any facilities and is not involved in the day-to-day operations of its wholly owned subsidiaries." When asked what Universal Health Services, Inc. does on a day-to-day basis, Mr. Klein answered, "Hold the stock of its wholly owned subsidiaries." Concluding UHS of Delaware does not have the necessary common control of BCA and Meridell, we find BCA's argument of being affiliated with a Texas facility for purposes of Chapter 74 unpersuasive.

Based on our review of the record and applicable law, we overrule BCA's first issue.

BCA further complains the trial court erred in refusing to admit exhibits into evidence at the motion to dismiss hearing. BCA offered into evidence four exhibits at the hearing for the motion to dismiss: (1) a Supplemental Affidavit of Frank Alvarez regarding attorney fees, (2) Records of Dr. John Edlin, (3) an Affidavit of Paul Johnson, CEO of BCA, and (4) an Affidavit of Gail M. Oberta, CEO of Meridell Achievement Center. The trial court declined to admit the exhibits into the evidence because the hearing was a non-evidentiary hearing. The court further stated BCA's failure to file the exhibits, as well as their response until the night before the hearing, and repetitive number of times the hearing had been set was "ridiculous" and further commented, "I don't appreciate it." While the trial court did not admit the exhibits into evidence, it did accept the exhibits which made them part of the record on appeal. Consequently, as discussed above, we have reviewed the exhibits and still find a lack of evidence to establish BCA as a health care provider under Chapter 74. Based on our review of the record, BCA's second issue is overruled.

*Conclusion*

We conclude the Kline's claim does not qualify as a health care liability claim under Chapter 74 and therefore, they are not required to file an expert report. We affirm the trial court's order denying BCA's motion to dismiss.