

**KEN PAXTON**

ATTORNEY GENERAL OF TEXAS

June 11, 2024

Mr. R. Scott Kesner
Chair, Texas Real Estate Commission
Post Office Box 12188
Austin, Texas 78711-2188

>    **Opinion No. KP-0467**
>
>    Re: Whether a person who negotiates a lease of property for the development of a wind power project on behalf of another, for compensation, is required to hold a license issued by the Texas Real Estate Commission (RQ-0523-KP)

Dear Mr. Kesner:

You ask whether a person who negotiates a lease for property for the development of a wind power project on behalf of another, for compensation, must have a license from the Texas Real Estate Commission ("Commission").[1] As background you tell us the Commission recently received a complaint "alleging that an individual employed by a company hired to negotiate a lease for a wind farm development project was engaged in activity that required a Commission-issued license, but did not have one." Request Letter at 1. You state that after the complaint was dismissed for lack of jurisdiction questions arose about the actual scope of the Commission's jurisdiction.[2] *Id.* You explain that the Commission has historically interpreted an exclusion to the licensure requirement to include a wind lease. *Id.* at 2. Without further explanation or context, you put the question of your jurisdiction to us.

---

[1]*See* Letter from R. Scott Kesner, Chair, Tex. Real Estate Comm'n, to Honorable Ken Paxton, Tex. Att'y Gen. at 1 (Nov. 27, 2023), https://texasattorneygeneral.gov/sites/default/files/request-files/request/2023/RQ0523KP .pdf ("Request Letter").

[2]In connection with your request, we received much input, including from representatives of the industry. *See* Letter from Robert Henneke, Exec. Dir., Tex. Pub. Pol'y Found., to Honorable Ken Paxton, Tex. Att'y Gen. (Feb. 13, 2024); Letter from Honorable Drew Darby, Tex. House of Reps., to Austin Kinghorn, Chairman, Op. Comm. (Jan. 2, 2024) ("Darby Letter"); Brief from Wesley D. Lloyd, Freeman Mills PC, to Austin Kinghorn, Op. Comm. Chair, on behalf of the Am. Ass'n of Pro. Landmen (Jan. 30, 2024) ("Lloyd Brief"); Brief from Jeffrey A. McCarn, McCarn Weir & Sherwood, to Honorable Ken Paxton, Tex. Att'y Gen., on behalf of Invenergy LLC (Jan. 2, 2024) ("McCarn Brief"); Brief from Jeffrey D. Clark, Pres., Advanced Power All., to Austin Kinghorn, Chair, Op. Comm. (Jan. 3, 2024) ("Clark Brief"); Letter from Matt Welch, State Dir., Conservative Texans for Energy Innovation, to Austin Kinghorn, Chairman, Op. Comm. (Jan. 2, 2024); Letter from Samuel Davis, Field Dir., Tex. Land & Liberty Coal., to Austin Kinghorn, Chairman, Op. Comm. (Jan. 2, 2024); Letter from Ben Sebree, Gen. Couns., Tex. Geothermal Energy All., to Austin Kinghorn, Chairman, Op. Comm. (Jan. 2, 2024) ("Sebree Letter") (all on file with the Op. Comm.).

**Occupations Code chapter 1101 requires that a person hold a license from the Commission to negotiate or attempt to negotiate the listing, sale, exchange, purchase or lease of real estate on behalf of another for compensation.**

The Real Estate License Act ("Act") found in Occupations Code chapter 1101 provides for the Commission and governs real estate brokers and sales agents. *See generally* TEX. OCC. CODE §§ 1101.001–.806. Under chapter 1101, the Commission provides licensure, educational, and disciplinary services, as well as regulation and enforcement of state law and other requirements in each of these areas. *See id.* §§ 1101.351–.367 ("License Requirements"), 1101.451–.459 ("License Renewal"), 1101.401–.405 ("Examinations"), 1101.301–.305 (relating to educational requirements), 1101.501–.509 (relating to certificates), 1101.651–.710 ("Prohibited Practices and Disciplinary Proceedings"), 1101.751–.804 ("Other Penalties and Enforcement Provisions"). The Act requires that a person hold a license under chapter 1101 before the person can "act as or represent that the person is a broker or sales agent[.]"[3] *Id.* § 1101.351(a)(1). One of the enumerated acts for which a license is required is the negotiation or attempts to negotiate "the listing, sale, exchange, purchase, or lease of real estate" on behalf of another for a commission or other valuable consideration. *Id.* § 1101.002(1)(A)(iii). Another is the selling, exchanging, purchasing, or leasing of real estate on behalf of another for a commission or other valuable consideration. *Id.* § 1101.002(1)(A)(i).

**Occupations Code chapter 1101 excludes a transaction involving the sale, lease, or transfer of a mineral or mining interest.**

Section 1101.005 excludes certain types of transactions from the application of chapter 1101, including "a transaction involving: (A) the sale, lease, or transfer of a mineral or mining interest in real property[.]" *Id.* § 1101.005(9)(A). You do not tell us about any particular wind lease transaction, but you generally describe a transaction involving "a lease in which a landowner leases the property for the development of a wind project[.]" Request Letter at 1. You presume, as do we, that the wind lease interest at issue is an interest in real property and thus real estate within the scope of chapter 1101.[4] *Id.*; *see also* TEX. OCC. CODE § 1101.002(5) (defining "[r]eal estate" to mean "any interest in real property, including a leasehold, located in or outside this state"). As

---

[3]A "[b]roker" is "a person who, in exchange for a commission or other valuable consideration or with the expectation of receiving [same], performs for another person" one of several enumerated acts related to real estate or real property. TEX. OCC. CODE § 1101.002(1)(A). Relevant here, a broker includes a person who "negotiates or attempts to negotiate the . . . lease of real estate[.]" *Id.* § 1101.002(1)(A)(iii). A "[s]ales agent" is "a person who is sponsored by a licensed broker for the purpose of performing" one of the acts enumerated in subsection 1101.002(1). *Id.* § 1101.002(7); *see also id.* § 1101.351(c) ("A licensed sales agent may not engage or attempt to engage in real estate brokerage unless the sales agent is sponsored by a licensed broker and is acting for that broker."). An "[e]asement or right-of-way agent" is "a person who sells, buys, leases, or transfers an easement or right-of-way for another, for compensation or with the expectation of receiving compensation, for use in connection with telecommunication, utility, railroad, or pipeline service." *Id.* § 1101.002(3-a); *see also id.* § 1101.501 ("A person may not act as an easement or right-of-way agent unless the person" holds a license or certificate of registration under chapter 1101.).

[4]While at least one court has addressed the issue, you do not ask about, and we do not opine on, the nature and severability of a wind interest. *See generally Ridge Renewables, LLC v. Hale Cnty. Wind Farm, LLC*, No. A43616-2012 (64th Dist. Ct., Hale County, Tex. May 11, 2023) (final judgment ordering damages for trespass against a severed wind property interest). Instead, we consider only the scope of subsection 1101.005(9)(A).

noted previously, you explain that the Commission has historically "interpreted 'mineral or mining interest' broadly to include other energy sources, like wind, within [the subsection 1101.005(9)(A)] exception." Request Letter at 2. However, based on the "plain language of [the subsection 1101.005(9)(A)] exemption and the lack of supportive case law," you question whether a person negotiating a wind lease as described herein *would* need to hold a license issued by the Commission. *Id.* Such a statement suggests that the Commission now believes that subsection 1101.005(9)(A) does not apply and that the negotiation of a wind lease for another is a transaction for which a person must hold a license under chapter 1101.

To address your question, we must construe subsection 1101.005(9)(A), and in that endeavor we are mindful of the importance of the statutory text. When courts interpret statutes, they describe their approach as follows:

> [W]e seek to effectuate the collective intent or purpose of the legislators who enacted the legislation. In so doing, we necessarily focus our attention on the literal text of the statute in question and attempt to discern the fair, objective meaning of the text at the time of its enactment. We follow this principle because (1) the text of the statute is the law; (2) the text is the only definitive evidence of what the legislators had in mind when the statute was enacted into law; and (3) the Legislature is constitutionally entitled to expect that the Judiciary will faithfully follow the specific text that was adopted. Our duty is to try to interpret the work of our Legislature as best we can to fully effectuate the goals they set out.

*Megwa v. State*, 633 S.W.3d 653, 666–67 (Tex. App.—Fort Worth 2021, pet. ref'd).

**Under Occupations Code chapter 1101, wind is not a mineral or mining interest.**

Chapter 1101 does not define the key phrase "mineral or mining interest in real property" within subsection 1101.005(9)(A). *See* Tex. Occ. Code § 1101.002 ("Definitions"). Typically, courts give undefined statutory terms their common meaning as derived from dictionaries. *See, e.g.*, *City of Richardson v. Oncor Elec. Delivery Co. LLC*, 539 S.W.3d 252, 261 (Tex. 2018). In the context of the conveyance of oil and gas interests, Texas courts have well-established jurisprudence involving construction of an "other mineral" in the conveying phrase "oil, gas and other minerals." And in that context, the Texas Supreme Court leans toward an ordinary definition, recognizing that using a substance's technical or scientific meaning is not determinative of whether it is a mineral for purposes of construing the phrase "other minerals." *Moser v. United States Steel Corp.*, 676 S.W.2d 99, 101–02 (Tex. 1984) (construing an "oil, gas and other minerals" clause in a lease or deed and citing *Heinatz v. Allen*, 217 S.W.2d 994, 997 (Tex. 1949)). The Texas Supreme Court recognized that utilization of such specialized definitions would render the phrase "other minerals" too broadly. *Id.* at 102. At the same time, Texas courts do not use the statutory construction canon *ejusdem generis* to limit the term "other minerals" following "oil and gas" to just hydrocarbons. *Id.* at 101. Instead, the Texas Supreme Court directs that one must "consider[] whether the substance is thought to be a mineral within the ordinary and natural meaning of the term." *Id.* at 102.

"[W]ind" commonly means "the perceptible natural movement of the air, esp. in the form of a current or air blowing from a particular direction[.]" New Oxford American Dictionary 1979 (3d ed. 2010). Specifically in the energy context, "wind" means "relating to or denoting energy obtained from harnessing the wind with windmills or wind turbines." *Id.* A "mineral" is "a solid inorganic substance of natural occurrence; a substance obtained by mining." *Id.* at 1113. Neither definition of wind connotes a mineral; wind is not a substance, and it is not "mined" as that term is commonly understood. *See id.* (defining "mine" as a verb to mean to "obtain (coal or other minerals) from a mine; dig in (the earth) for coal or other minerals"). As wind is not a mineral or mining interest under the common meaning of those terms, a wind lease transaction is not within the scope of subsection 1101.005(9)(A). Further, the list of exclusions in subsection 1101.005(9)(A) does not expressly contain another exception that might encompass the negotiation of a wind lease, nor can the list be readily construed to be inexhaustive.[5] *Cf.* Tex. Gov't Code § 311.005(13) ("'Includes' and 'including' are terms of enlargement and not of limitation or exclusive enumeration[.]").

**Under Occupations Code chapter 954, pertaining to land services, wind is not a mineral.**

We note that recent amendments to chapter 954 are relevant in considering the chapter's interaction with subsection 1101.005(9)(A). *See* Act of May 8, 2023, 88th Leg., R.S., ch. 197, § 1, 2023 Tex. Gen. Laws 387, 388 (codified at Tex. Occ. Code § 954.001(2)) ("Senate Bill 604"). Previously, the chapter excepted "acts relating to the lease, purchase, sale, or transfer of a mineral or mining interest in real property" from the practice of law but did not define any terms in that phrase. Tex. Occ. Code § 954.001 (West 2012). Senate Bill 604 amended chapter 954 to recharacterize the exception from a "mineral or mining interest" to that of "land services." *See* Act of May 8, 2023, 88th Leg., R.S., ch. 197, § 1, 2023 Tex. Gen. Laws 387, 388 (codified at Tex. Occ. Code § 954.001). Chapter 954 defines "[l]and services" to include "negotiating the acquisition or divestiture of *mineral rights or rights associated with other energy sources*[.]" Tex. Occ. Code § 954.001(1)(A)(i) (emphasis added). Land services also include "negotiating business agreements or easements to provide for the exploration for or development of minerals or other energy sources[.]" *Id.* § 954.001(1)(A)(ii). It defines "[m]ineral" by reference to a provision in the Property Code and clarifies that the term includes "oil, gas, related hydrocarbons, coal, lignite,

---

[5]Some briefers urge us to construe section 1101.005 as a non-exhaustive list because a related Commission rule contains items not included in section 1101.005. *See, e.g.*, Darby Letter at 2 (referring us to Administrative Code Title 22, section 535.5). This rule identifies certain persons and entities that do not require a license. *See* 22 Tex. Admin. Code § 535.5 (2024) (Tex. Real Estate Comm'n, License Not Required). We do not construe this rule to expand the list of exclusions in subsection 1101.005(9)(A), but rather to clarify certain circumstances where someone is acting on behalf of another person but not as an "agent." *See id.* § 535.5(a); *see also Reliant Energy Servs., Inc. v. Cotton Valley Compression, L.L.C.*, 336 S.W.3d 764, 782–83 (Tex. App.—Houston [1st Dist.] 2011, no pet.) ("An agent is one authorized by another to transact some business for the principal; the relationship is a consensual one between two parties, by which one party acts on behalf of the other, subject to the other's control." (quoting *Jamison v. Nat'l Loan Investors, L.P.*, 4 S.W.3d 465, 468 (Tex. App.—Houston [1st Dist.] 1999, pet. denied))). Moreover, an agency rule that imposes additional burdens or conditions in excess of or inconsistent with the statute would be invalid and a court is unlikely to look to an invalid rule to construe a statutory provision. *See Kelly v. Indus. Accident Bd.*, 358 S.W.2d 874, 876–77 (Tex. App.—Austin 1962, writ ref'd).

uranium, and substances classified as base, industrial, precious, or strategic minerals." *Id.* § 954.001(2) (referring to Property Code section 75.001).

But the definition of "mineral" does not include wind. *See id.* Instead, separate from the definition of "mineral," chapter 954 includes wind as an "[o]ther energy source," which is defined as "a natural resource *other than a mineral* that is necessary to produce energy, including geothermal, hydroelectric, nuclear, solar, and *wind energy.*" *Id.* § 954.001(3) (emphases added). As wind is an "other energy source" under chapter 954, it is not a "mineral" under the chapter. *See id.* § 954.001(1)(A)(i) (treating other energy sources separately from mineral rights); *see generally L & M-Surco Mfg., Inc. v. Winn Tile Co.*, 580 S.W.2d 920, 923 (Tex. App.—Tyler 1979, writ dism'd) ("We must presume that the Legislature, by using different terms, had different significations in mind, and used them advisedly.").

During the floor debate of Senate Bill 604, an amendment struck a proposed specific exclusion for "the sale, lease, or transfer of an interest in real property relating to another energy source, as defined by Section 954.001" that would have added to the list of exemptions in Occupations Code subsection 1101.005(9)(A). H.J. of Tex., 88th Leg., R.S. 3319–20 (2023) (Amendment No. 1). The amendment's sponsor tells us that he "believed the exclusion of landmen from the scope of the statute was so clearly well-established" as to be unnecessary, and it was not his intent to "expand [the Commission's] jurisdiction or place an undue burden on landmen." Darby Letter at 2. Yet,

> [s]tatements made during the legislative process by individual legislators or even a unanimous legislative chamber are not evidence of the collective intent of the majorities of both legislative chambers that enacted a statute. . . . [T]he Legislature expresses its intent by the words it enacts and declares to be the law.

*Molinet v. Kimbrell*, 356 S.W.3d 407, 414 (Tex. 2011) (citation omitted); *see also Alex Sheshunoff Mgmt. Servs., L.P. v. Johnson*, 209 S.W.3d 644, 651 (Tex. 2006) ("Ordinarily, the truest manifestation of what legislators intended is what lawmakers enacted, the literal text they voted on."). As we must be guided by the text, no language in chapter 954 leads to the conclusion that transactions involving wind leases are excluded from the licensure requirement of chapter 1101.

Accordingly, a court would likely find that subsection 1101.005(9)(A)'s language "mineral or mining interest" does not include wind such that a person negotiating a lease for property of a wind power project on behalf of another, for compensation, is required to hold a license issued by the Commission.

**A court would not likely defer to the Commission's historical interpretation.**

Irrespective of our conclusion, we recognize that an administrative agency's interpretation of its statutory language is entitled to some deference. *See Sirius XM Radio, Inc. v. Hegar*, 643 S.W.3d 402, 407 (Tex. 2022). But such deference is afforded only when the construction is "reasonable and does not contradict the plain language of the statute." *Id.* (quoting *R.R. Comm'n v. Tex. Citizens for a Safe Future & Clean Water,* 336 S.W.3d 619, 625 (Tex. 2011)); *see also* Tex. Att'y Gen. Op. No. KP-0115 (2016) at 4–9 (discussing judicial deference to agency interpretations of statutes). Moreover, you do not point us to an administrative rule or other formal action denoting this historical interpretation. *See generally* Request Letter at 1–2. While it "is true that courts give some deference to an agency regulation containing a reasonable interpretation of an *ambiguous* statute," a relevant qualifier is that such deference applies only "to formal opinions adopted after formal proceedings, not isolated comments during a hearing or opinions in documents" such as an agency brief. *Fiess v. State Farm Lloyds*, 202 S.W.3d 744, 747 (Tex. 2006) (emphasis added); *see also* Tex. Att'y Gen. Op. No. KP-0115 (2016) at 4 (discussing agency deference afforded to formal and informal agency statements). However, in this case there is no ambiguity. Wind is not a mineral and it is not mined. Accordingly, we think it is unlikely a court would defer to the Commission's historical interpretation. And given our analysis above, we question whether the Commission's historical interpretation was consistent with the statute such that a court would grant it deference. *See generally Tex. State Bd. of Examiners of Marriage & Fam. Therapists v. Tex. Med. Ass'n*, 511 S.W.3d 28, 33 (Tex. 2017) (recognizing that an agency can adopt "only such rules as are authorized by and consistent with its statutory authority" (citation omitted)).

**The Legislature is the policy maker for the State.**

Briefers inform us that the potential consequences of expanding the Commission's jurisdiction to include landmen involved in wind energy leasing "would be negative and far-reaching, including slowing development of critical Texas energy resources, increasing costs to Texas energy consumers, and reducing lease payments to partnering landowners." Darby Letter at 1–2 (stating also that the "impact of such a radical departure from the settled understanding of [the Commission's] authority would not only disrupt development of this critical natural resource but would also set a precedent for surface leasing other non-mineral forms of energy (solar, geothermal, etc.)."); *see also, e.g.*, McCarn Brief at 7 (stating that requiring landmen to obtain a Commission license "would create chaos throughout the wind industry in Texas" and "could have the effect of substantially decreasing jobs as new wind projects face significant delays and regulatory uncertainty").

Like the courts, it is not for us "to judge the wisdom of the policy choices of the Legislature, or to impose a different policy of our choosing." *Morath v. Tex. Taxpayer & Student Fairness Coal.*, 490 S.W.3d 826, 878 (Tex. 2016) (citation omitted). Here, the Legislature has spoken clearly with its text. Occupations Code subsection 1101.005(9)(A) does not include wind as a mineral or mining interest. And Occupations Code chapter 954 clearly treats wind as an "other energy source," distinct from a mineral. The Legislature is free to modify these provisions should it wish. *See* Tex. Att'y Gen. Op. No. GA-0822 (2010) at 2.

**S U M M A R Y**

Occupations Code chapter 1101 governs the Texas Real Estate Commission and requires licensure of certain professionals engaged in transactions involving real property, including the negotiation of a lease. Subsection 1101.005(9)(A) excludes transactions involving the lease of mineral or other mining interests in real property from the application of chapter 1101. As commonly defined, wind is not a mineral or mining interest. And no other provision in chapter 1101 expressly excludes transactions involving wind leases. Further, under related Occupations Code chapter 954, governing land services, wind is an "other energy source" and not a "mineral."

For these reasons, a court would likely find that subsection 1101.005(9)(A)'s language "mineral or mining interest" does not include wind such that a person negotiating a lease for property of a wind power project on behalf of another, for compensation, is required to hold a license issued by the Commission.

Very truly yours,

K E N   P A X T O N
Attorney General of Texas

BRENT WEBSTER
First Assistant Attorney General

LESLEY FRENCH
Chief of Staff

D. FORREST BRUMBAUGH
Deputy Attorney General for Legal Counsel

AUSTIN KINGHORN
Chair, Opinion Committee